UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------- x

MARK SELIGER, an individual,            :

                          Plaintiff,     :

                                 :

                   v.              :

                                 :

GROUP NINE MEDIA, INC., a Delaware   :
Corporation; POPSUGAR INC., a Delaware  :
Corporation; and DOES 1-10, inclusive,    :

                                 :

                 Defendants.   :

------------------------------------------------------------- x

Case No. 1:20-cv-02965

Hon. J. Paul Oetken

ORAL ARGUMENT REQUESTED

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

Rachel F. Strom
Jeremy A. Chase
Amanda B. Levine
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel: (212) 489-8230
Fax: (212) 489-8340
rachelstrom@dwt.com
jeremychase@dwt.com
amandalevine@dwt.com

*Attorneys for Defendants*
*Group Nine Media, Inc. and PopSugar Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

STATEMENT OF FACTS ............................................................................................... 3

ARGUMENT ................................................................................................................. 4

    I.    MOTION TO DISMISS ........................................................................................ 4

        A.    Group Nine Is Not a Proper Defendant in this Action ..................................... 5

        B.    Plaintiff's Claim of Copyright Infringement Must Be Dismissed .................... 7

            1.    Plaintiff Fails to Allege that the Copyright Office Issued
                Registrations for the Photographs Prior to Plaintiff Filing Suit ............ 8

            2.    118 Purported Uses Should Be Dismissed Because Plaintiff
                Fails to Plead Infringement .................................................................. 9

            3.    Claims Arising from URL 40 Should be Dismissed as
                De Minimis or Fair Use ...................................................................... 11

            4.    Claims Arising From 34 URLs Are Barred by the Statute of
                Limitations ......................................................................................... 17

        C.    Plaintiff Fails to Plausibly Allege a Claim for Secondary Copyright
            Infringement .................................................................................................. 18

        D.    Plaintiff Fails to Plausibly Allege a Claim Under 17 U.S.C. § 1202.............. 20

    II.    MOTION FOR A MORE DEFINITE STATEMENT ............................................... 23

CONCLUSION .............................................................................................................. 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Fuel Corp. v. Utah Energy Dev. Co.*,
    122 F.3d 130 (2d Cir. 1997)..................................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................4, 5

*Authors Guild v. Google Inc.*,
    804 F.3d 202 (2d Cir. 2015)................................................................................14

*Banff Ltd. v. Limited, Inc.*,
    869 F. Supp. 1103 (S.D.N.Y. 1994).................................................................6, 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................5

*Blanch v. Koons*,
    467 F.3d 244 (2d Cir. 2006)..........................................................................13, 15

*BWP Media USA, Inc. v. Gossip Cop Media, LLC*,
    87 F. Supp. 3d 499 (S.D.N.Y. 2015)....................................................................4

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994)......................................................................................14, 15

*Cannon v. Douglas Elliman, LLC*,
    No. 06 Civ. 7092 (NRB), 2007 WL 4358456 (S.D.N.Y. Dec. 10, 2007)................7

*Cariou v. Prince*,
    714 F.3d 694 (2d Cir. 2013)..............................................................................13

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
    536 F.3d 121 (2d Cir. 2008)..............................................................................19

*Chevrestt v. American Media, Inc.*,
    204 F. Supp. 3d 629 (S.D.N.Y. 2016).................................................................22

*Clark v. Transp. Alternatives, Inc.*,
    No. 18 Civ. 9985 (VM), 2019 WL 1448448 (S.D.N.Y. Mar. 18, 2019) ................16

*Dauman v. Hallmark Card, Inc.*,
    No. 96 Civ. 3608 (JFK), 1998 WL 54633 (S.D.N.Y. Feb 9, 1998)....................6, 19

*Faulkner v. Nat'l Geographic Enters. Inc.*,
    409 F.3d 26 (2d Cir. 2005)....................................................................................19

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019)....................................................................................11

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
    139 S. Ct. 881 (2019)..............................................................................................8

*G.D. Searle & Co. v. Medicore Commc'ns, Inc.*,
    843 F. Supp. 895 (S.D.N.Y. 1994) ..........................................................................7

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
    443 F.2d 1159 (2d Cir. 1971)................................................................................18

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
    590 F. Supp. 2d 625 (S.D.N.Y. 2008)...............................................................9, 12

*Gunnells v. Teutul*,
    392 F. Supp. 3d 451 (S.D.N.Y. 2019)....................................................................17

*Hirsch v. CBS Broad. Inc.*,
    No. 17 Civ. 1860 (PAE), 2017 WL 3393845 (S.D.N.Y. Aug. 4, 2017) .................22

*Hughes v. Benjamin*,
    437 F. Supp. 3d 382 (S.D.N.Y. 2020)....................................................................13

*Imageline, Inc. v. CafePress.com, Inc.*,
    No. CV 10-9794, 2011 WL 1322525 (C.D. Cal. Apr. 6, 2011) ...............................5

*Italian Book Corp. v. American Broadcasting Cos.*,
    458 F. Supp. 65 (S.D.N.Y. 1978) ....................................................................14, 16

*Joe Hand Promotions, Inc. v. Shaikh*,
    No. 19-CV-3500 (MKB), 2020 WL 1878165 (E.D.N.Y. Mar. 4, 2020) .................20

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003) ................................................................................16

*Krechmer v. Tantaros*,
    747 F. App'x 6 (2d Cir. 2018) ...............................................................................21

*LaFaro v. New York Cardiothoracic Grp.*,
    570 F.3d 471 (2d Cir. 2009)....................................................................................4

*Lopez v. Bonanza.com, Inc.*,
    No. 17 Civ. 8493 (LAP), 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019).........18, 19

iii

*MAG Portfolio Consult, GMBH v. Merlin Biomed Grp., LLC*,
268 F.3d 58 (2d Cir. 2001)..................................................................................................6

*Malibu Media, LLC v. Doe*,
No. 18-CV-10956 (JMF), 2019 WL 1454317 (S.D.N.Y. Apr. 2, 2019) ...................................8

*Mayimba Music, Inc. v. Sony Corp. of Am.*,
No. 12 Civ. 1094 (AKH), 2014 WL 5334698 (S.D.N.Y. Aug. 19, 2014)..............................19

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)..........................................................................................................19

*Michael Grecco Prods., Inc. v. Ziff Davis LLC*,
No. 19-cv-4776, Dkt. 34 (C.D. Cal. Nov. 18, 2019)...........................................................17

*Minden Pictures, Inc. v. BuzzFeed, Inc.*,
390 F. Supp. 3d 461 (S.D.N.Y. 2019)...........................................................................17, 18

*On Davis v. Gap, Inc.*,
246 F.3d 152 (2d Cir. 2001)...............................................................................................12

*Palatkevich v. Choupak*,
Nos. 12 Civ. 1681(CM), 12 Civ. 1682(CM), 2014 WL 1509236 (S.D.N.Y.
Jan. 24, 2014)....................................................................................................................8

*Palmer Kane LLC v. Scholastic Corp.*,
No. 12 Civ. 3890(TPG), 2014 WL 1303135 (S.D.N.Y. Mar. 31, 2014) ...........................9, 10

*Premier Fabrics, Inc. v. Woodland Trading Inc.*,
42 F. Supp. 3d 549 (S.D.N.Y. 2014)..................................................................................20

*Psihoyos v. John Wiley & Sons, Inc.*,
748 F.3d 120 (2d Cir. 2014)...............................................................................................17

*Ringgold v. Black Entm't Television, Inc.*,
126 F.3d 70 (2d Cir. 1997).................................................................................................12

*RSM Prod. Corp. v. Fridman*,
643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010)........................7

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
464 U.S. 417 (1984)..........................................................................................................14

*TCA Television Corp. v. McCollum*,
839 F.3d 168 (2d Cir. 2016)...............................................................................................13

*United States v. Bestfoods*,
524 U.S. 51 (1998)..............................................................................................................5

iv

*Walsh v. Townsquare Media, Inc.*,
   No. 19-CV-4958 (VSB), 2020 WL 2837009 (S.D.N.Y. June 1, 2020)............................15, 16

*Williams v. A & E Television Networks*,
   122 F. Supp. 3d 157 (S.D.N.Y. 2015)............................................................................19

*Wright v. Warner Books, Inc.*,
   953 F.2d 731 (2d Cir. 1991)...........................................................................................14

**Statutes**

17 U.S.C.
   § 106.............................................................................................................................13
   § 107.............................................................................................................................13
   § 411(a).........................................................................................................................8, 9
   § 507(b)........................................................................................................................17
   § 1202....................................................................................................................... *passim*
   § 1202(a)...............................................................................................................20, 21, 22
   § 1202(b)...............................................................................................................21, 22, 23

**Other Authorities**

Federal Rule of Civil Procedure
   12(b)(6)......................................................................................................................1, 13
   12(e).........................................................................................................................1, 23

Federal Rule of Evidence 201(b)(2) ...........................................................................11

Defendants Group Nine Media, Inc. ("Group Nine") and PopSugar Inc. ("PopSugar") (together, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and, in the alternative, for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

## PRELIMINARY STATEMENT

Plaintiff Mark Seliger's ("Plaintiff") Amended Complaint purports to assert claims of copyright infringement, secondary infringement, and violations of 17 U.S.C. § 1202 based on the alleged use of sixty-one of his photographs ("Photographs") in content appearing on 159 URLs on PopSugar's website.[1]  But not only is Plaintiff's Amended Complaint hardly a model of clarity, it in fact falls so far short of stating a plausible claim for relief that it is nearly impossible for Defendants to understand it, let alone be able to defend against the claims included in it.

The deficiencies in the Amended Complaint permeate the entire document and, indeed, begin with the parties in the caption.  Group Nine is PopSugar's parent company, having acquired PopSugar in November 2019.  Plaintiff does not make a single factual allegation of wrongdoing against Group Nine.  The mere fact that Group Nine is PopSugar's parent is insufficient to make Group Nine either directly or secondarily liable for PopSugar's alleged infringement.

It only gets worse from there.  The Amended Complaint simply recites the elements of a copyright infringement claim and then attaches a nine-page, scattershot list of plain-text URLs that allegedly show PopSugar's infringements of Plaintiff's Photographs.  But when copied and pasted into an Internet browser, sixty-six of these URLs are dead links, forty-five lead to web pages containing photographs unrelated to those included in the Amended Complaint, and seven

---

[1] A numbered listing of the photographs at issue in this litigation is attached as Exhibit A to the Declaration of Jeremy A. Chase dated July 27, 2020 ("Chase Declaration").  A numbered, de-duplicated listing of the URLs at issue in this litigation is attached as Exhibit B to the Chase Declaration.

direct readers to seemingly endless "Latest News" pages, where it is impossible to locate the allegedly infringing Photographs without spending untold time meticulously scrolling through years' worth of articles and photographs.  For the URLs that actually do lead to the Photographs included in the Amended Complaint, at least one use is a non-actionable *de minimis* or fair use.

Plaintiff also fails to allege any facts—such as the copyright registration numbers or registration dates—that would render his barebones allegation that he "has registered the subject Photography with the Copyright Office" remotely plausible.  Likewise, at least as to the purported uses that Defendants can actually discern, it is clear on the face of thirty-four URLs that they were published outside of the three-year statute of limitations, and Plaintiff has not pled any facts suggesting that he discovered the uses within the limitations period.

Plaintiff's claims of contributory and/or vicarious infringement fare no better.  The Amended Complaint neither specifies any third party infringement to which Defendants contributed nor includes factual allegations demonstrating that Defendants induced or materially contributed to that infringement (for purposes of contributory infringement) or had a direct financial interest in that infringement (for purposes of vicarious infringement).

Finally, Plaintiff's claim concerning violations of 17 U.S.C. § 1202 is nothing more than a mere recitation of the elements of that cause of action.  Not only does he fail to allege under which sub-section of § 1202 he sues, but he does not allege what copyright management information the original Photographs contained, in what way Defendants removed or changed that information, and any facts that could raise a plausible inference that Defendants did so with the intent to deceive readers.

Accordingly, the Amended Complaint should be dismissed in its entirety.  In the alternative, to the extent any of Plaintiff's claims can survive this motion, the Court should

require that Plaintiff submit a further amended complaint to cure the numerous deficiencies that remain in the pleading—including his failure to list registration numbers or registration dates for the Photographs, his failure to include screenshots of the subject uses or to plead sufficient factual allegations such that Defendants are on notice of the facts that give rise to the alleged infringement(s), and his failure to list the dates that he discovered the uses—so that PopSugar can properly assess its defenses and accurately answer Plaintiff's allegations.

**STATEMENT OF FACTS**

Plaintiff is a photographer who purportedly created and owns the sixty-one photographs appearing in Exhibit A to Plaintiff's Amended Complaint.  *See* Am. Compl. ¶¶ 9–10.  Plaintiff seeks statutory damages, claiming that he "has registered the Subject Photography with the Copyright Office."  *See id.* ¶ 11.  The Amended Complaint, however, contains no factual allegations, such as registration numbers, publication dates, or registration dates, that could establish registration prior to filing suit or that would entitle Plaintiff to statutory damages under the Copyright Act.

Defendant Group Nine is a digital media holding company.  In November 2019, Group Nine acquired Defendant PopSugar, a media and technology company that publishes on its website popsugar.com.

On April 10, 2020, Plaintiff filed this action against Defendants, asserting claims for copyright infringement, vicarious and/or contributory copyright infringement, and violations of 17 U.S.C. § 1202.  Plaintiff filed the Amended Complaint—the operative complaint in this action—on May 12, 2020. Plaintiff alleges that, over the course of the last two decades, "Defendants" published the Photographs on 159 web pages on popsugar.com.  Attached as Exhibit B to the Amended Complaint is a list of URLs that Plaintiff alleges contain Defendants' secondary uses of Plaintiff's Photographs.  However, Plaintiff fails to tie any particular URL in

Exhibit B to any of the Photographs set forth in Exhibit A.  Plaintiff seeks an injunction ordering Defendants to remove the Photographs in "any print, web, or other publication" that they own or operate, a constructive trust to be entered over any proceeds realized by Defendants, statutory damages, additional damages, and attorneys' fees.  *See* Am. Compl. at 6–7 (Prayer for Relief).

## ARGUMENT

## I.

## MOTION TO DISMISS

"[T]he Second Circuit has endorsed the resolution of . . . copyright questions at the pleadings stage by analyzing the complaint and incorporating by reference the documents referred to therein."  *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015) (citing *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63–65 (2d Cir. 2010)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  In applying this standard, the Court need not credit conclusory legal allegations or "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. (quoting *Twombly*, 550 U.S. at 557); *see also LaFaro v. New York Cardiothoracic Grp.*, 570 F.3d 471, 475-76 (2d Cir. 2009) ("We are not bound to accept as true legal conclusions couched as factual allegations.").  Where the well-pleaded facts do not "plausibly give rise to an entitlement to relief," dismissal is appropriate.  *Iqbal*, 556 U.S. at 679.

The *Iqbal/Twombly* pleading standard is particularly important here.  Plaintiff seems to believe that merely reciting the elements of copyright infringement, secondary infringement, and

violations of 17 U.S.C. § 1202 and then haphazardly copying more than 150 URLs into an exhibit to his Amended Complaint, entitles him to immense monetary damages and injunctive relief from two separate Defendants.  This is not so.  Plaintiff has not alleged *any* facts to support his claim against Group Nine and has not asserted a plausible claim for relief against PopSugar. Accordingly, the Court should dismiss this action in its entirety.

**A.      Group Nine Is Not a Proper Defendant in this Action**

As an initial matter, Group Nine must be dismissed from this action because the only allegations that Plaintiff makes against it are unfounded assertions that Group Nine "does business under its own name and 'Popsugar,'" Am. Compl. ¶ 5, and that "at all times relevant hereto each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants."  *Id.* ¶ 8.[2]  These allegations—the former of which is entirely conclusory and the latter of which, in addition to being conclusory is also clearly pulled from another litigation and makes no sense in this context—do not create a sufficient basis to keep Group Nine in this case.

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation and internal quotation marks omitted).  In other words, "[a] parent corporation and its subsidiary are regarded as legally distinct entities," and both "the legal relationship between a parent and its subsidiary" and "the fact that a parent company benefits financially by virtue of the subsidiary" are "insufficient to state a claim for

---

[2] At least one other court, in a case brought by Plaintiff's counsel, recognized that a nearly identical allegation was insufficient to state a claim.  *See Imageline, Inc. v. CafePress.com, Inc.*, No. CV 10-9794 (MANx), 2011 WL 1322525, at *4 (C.D. Cal. Apr. 6, 2011) ("The only allegations made by Imageline—that each defendant was the 'agent, partner, servant, supervisor, employee, successor and/or joint venturer of each of the remaining defendants and was at all time . . . acting within the course and scope, and purpose of said agency, employment, business enterprise and joint venture,'—are nothing more than legal conclusions of the type prohibited by *Iqbal* and *Twombly*.") (citation omitted).

copyright infringement against the parent." *Dauman v. Hallmark Card, Inc.*, No. 96 Civ. 3608 (JFK), 1998 WL 54633, at *6 (S.D.N.Y. Feb 9, 1998).

Here, Plaintiff makes no specific factual allegation against Group Nine, separate and apart from PopSugar. Indeed, each of the URLs to purportedly infringing content included in Plaintiff's Exhibit B directs to pages from popsugar.com. Apparently based on nothing more than the fact that Group Nine is now PopSugar's parent company, Plaintiff claims that Group Nine "does business" under the name PopSugar. Am. Compl. ¶ 5. But accepting this conclusory and false allegation and holding Group Nine responsible for the alleged wrongs of a newly acquired subsidiary would eviscerate the protections afforded by corporate formalities. *See Banff Ltd. v. Limited, Inc.*, 869 F. Supp. 1103, 1109 (S.D.N.Y. 1994) ("[T]he parent-subsidiary relationship is not marked by a presumption that the acts of the one are intimately associated with the other. A subsidiary possesses an independent legal existence; it may organize its affairs and make its decisions completely independently of its parent.").

In addition, the claims that Group Nine is PopSugar's alter-ego and that PopSugar was acting as Group Nine's agent are similarly baseless. In order for a parent corporation to be deemed an alter-ego of its subsidiary under New York law, a plaintiff must show that the parent exercised "complete domination" over the subsidiary with respect to the transaction at issue, and that this domination was "used to commit a fraud or wrong" that injured the plaintiff. *See Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997). To determine whether there was adequate "domination," courts look at factors including but not limited to, the disregard of corporate formalities, inadequate capitalization, intermingling of property and funds, and overlap in officers, directors, or personnel. *See MAG Portfolio Consult, GMBH v. Merlin Biomed Grp., LLC*, 268 F.3d 58, 63 (2d Cir. 2001). Plaintiff does not allege that any of these

factors apply to Group Nine and PopSugar.  Moreover, Plaintiff does not—and cannot—allege that Group Nine exercised any domination with respect to the transaction at issue, particularly because Group Nine did not acquire PopSugar until late last year, after the publication of all of the allegedly infringing uses (to the extent they are cognizable in the Amended Complaint).

Similarly, "[a]gency is the relationship that results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."  *G.D. Searle & Co. v. Medicore Commc'ns, Inc.*, 843 F. Supp. 895, 904 (S.D.N.Y. 1994).  "[C]onclusory allegations regarding an agency relationship . . . are not sufficient to survive a motion to dismiss."  *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 408 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010); *Cannon v. Douglas Elliman, LLC*, No. 06 Civ. 7092 (NRB), 2007 WL 4358456, at *5 (S.D.N.Y. Dec. 10, 2007) (dismissing a complaint that contained only "conclusory allegations of an agency relationship" and stated that "the defendants acted 'as agents for each other' . . . but offer[ed] no facts from which inferences of actual or apparent authority [could] be drawn").  Because Plaintiff offers nothing other than the bare allegation that each Defendant is the other's agent, the Amended Complaint fails to plead an agency relationship sufficient to survive a motion to dismiss.  Accordingly, Group Nine must be dismissed from this action.

**B.    Plaintiff's Claim of Copyright Infringement Must Be Dismissed**

Plaintiff's allegations of direct infringement fail to state a claim for relief.  ***First***, claims arising from all URLs should be dismissed because Plaintiff fails to plausibly allege that he registered the Photographs prior to filing suit.  ***Second***, Plaintiff fails to state a claim for infringement as to 118 of the URLs because he fails to plead any facts that could establish an infringing use.  ***Third***, one use is, as a matter of law, a *de minimis* or protected fair use and is therefore non-actionable.  ***Fourth***, Plaintiff's claims as to thirty-four URLs are barred by the

7

three-year statute of limitations. Accordingly, this Court should dismiss Plaintiff's claim for direct infringement in its entirety.

### 1. Plaintiff Fails to Allege that the Copyright Office Issued Registrations for the Photographs Prior to Plaintiff Filing Suit

"To withstand a motion to dismiss, a complaint based on copyright infringement must allege: (1) which original works are the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) 'by what acts during what time' the defendant infringed the copyright." *Palatkevich v. Choupak*, Nos. 12 Civ. 1681(CM), 12 Civ. 1682(CM), 2014 WL 1509236, at *6 (S.D.N.Y. Jan. 24, 2014) (citations and internal quotation marks omitted).

With respect to the third requirement, Section 411(a) of the Copyright Act provides that a copyright owner can only sue for infringement once "registration . . . has been made." *See* 17 U.S.C. § 411(a). In *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019), the United States Supreme Court held that this provision requires that the Copyright Office actually issue a registration for an image before a copyright owner can sue. *Id.* at 892. In other words, merely *filing* a registration application with the Copyright Office is not a sufficient basis to bring a copyright infringement lawsuit. *Id.*

Here, Plaintiff alleges that he "has registered the Subject Photography with the Copyright Office," Am. Compl. ¶ 11, but does not allege that the Copyright Office actually issued the registration. Nor does Plaintiff allege any information whatsoever concerning the purported registrations, such as when the Photographs were first published, the effective dates of registration, or the dates the Photographs were allegedly published by Defendants. This information is crucial to Plaintiff's copyright claim because his claim may not proceed absent issuance of a registration for each Photograph at issue. *See Malibu Media, LLC v. Doe*, No. 18-

CV-10956 (JMF), 2019 WL 1454317, at *2 (S.D.N.Y. Apr. 2, 2019) ("[I]t is a plaintiff's burden to allege, and later to prove, that Section 411(a)'s pre-suit requirements are satisfied."). Because Plaintiff has failed to plead this fundamental prerequisite to a copyright suit, his direct infringement claim should be dismissed in its entirety.

### 2.     118 Purported Uses Should Be Dismissed Because Plaintiff Fails to Plead Infringement

To establish infringement, a plaintiff must show: "(1) unauthorized copying of the copyrighted work occurred, and (2) the infringing work is substantially similar." *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 631 (S.D.N.Y. 2008). "A plaintiff 'may not rest on bare-bones allegations that infringement occurred.'" *Palmer Kane LLC v. Scholastic Corp.*, No. 12 Civ. 3890(TPG), 2014 WL 1303135, at *3 (S.D.N.Y. Mar. 31, 2014) (quoting *Sharp v. Patterson*, No. 03 Civ. 8772(GEL), 2004 WL 2480426, *12 (S.D.N.Y. Nov. 3, 2004)). Plaintiff fails to meet the governing pleading standard with respect to 118 out of 159 of the URLs listed in Exhibit B to the Amended Complaint.

*First*, sixty-six[3] of the URLs listed in Exhibit B to the Amended Complaint direct the user to dead links,[4] and Plaintiff did not attach screenshots or allege any facts concerning these URLs or the alleged infringing uses that could establish a plausible claim for relief. Indeed, the only other information that Plaintiff provides is that Defendants "copied, reproduced, displayed, and distributed the Subject Photography." *See* Am. Compl. ¶ 16. But a complaint is required to "contain some factual allegations to narrow the infringing activities beyond broad conclusory

---

[3] *See* Chase Decl. Exs. B & C, URL Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 13, 29, 30, 32, 33, 34, 35, 36, 45, 54, 58, 59, 60, 61, 62, 63, 64, 71, 77, 78, 80, 81, 82, 95, 96, 97, 98, 99, 112, 114, 118, 119, 120, 121, 122, 123, 124, 126, 127, 130, 133, 137, 140, 141, 142, 144, 146, 148, 150, 151, 154, 155, 156, 157, 158, and 159.

[4] PC Magazine defines a "dead link" as "a hyperlink on a website that points to a Web page that has been deleted or moved. Also called an "orphan link," it may also be a temporary condition if the Web server is down." PC Magazine, "Dead Link," (last accessed July 27, 2020), https://www.pcmag.com/encyclopedia/term/dead-link#:~:text=A%20hyperlink%20on%20a%20website,404%20error%20and%20link%20rot.

statements of infringement." *Palmer Kane*, 2014 WL 1303135, at *4.   From Plaintiff's generalized allegations and inactive URLs, Defendants cannot discern which, if any, of the Photographs Plaintiff is claiming appeared on PopSugar's website, during what time periods they appeared, and in what manner they appeared.   Accordingly, Plaintiff has failed to adequately plead unauthorized copying of the work, and any infringement claims stemming from these URLs must be dismissed.[5]

*Second*, forty-five[6] of the URLs in Exhibit B to the Amended Complaint lead to web pages that do not contain any of the Photographs listed in Exhibit A of the Amended Complaint. Because Plaintiff does not claim that any works other than those listed in Exhibit A are the subject of his copyright claim, claims stemming from these URLs must be dismissed.

*Third*, seven[7] of the URLs that Plaintiff provides lead to general informational pages about a given topic, which contain all of the stories on PopSugar's website concerning that subject.   For example, URL 53 is the "Latest Twilight" page, which provides readers with all articles about the Twilight movie and book franchise, including photographs that appear within those articles.   *See* Chase Decl. Exs. B & C, URL No. 53.   URL 106 is the "Latest Jimmy Fallon" page, which contains all articles written about television host Jimmy Fallon and the photographs contained within those articles.   *See* Chase Decl. Exs. B & C, URL No. 106.   As a user scrolls on one of these pages, the page continues to expand with years' worth of articles and photographs.    As a result, finding the allegedly infringing Photograph(s) is practically impossible.   Because Defendants should not be required to go on a wild goose chase in order to

---

[5] The fact that it may be possible for Defendants to search through their records – to the extent any such records exist – to determine whether the URLs ever contained Plaintiff's Photographs is inapposite.   It is *Plaintiff's* burden to establish infringement, and merely providing inactive URLs fails to meet that burden.

[6] *See* Chase Decl. Exs. B & C, URL Nos. 14, 15, 16, 17, 19, 20, 21, 22, 23, 24, 25, 26, 37, 38, 39, 41, 42, 43, 50, 51, 55, 57, 65, 66, 67, 68, 70, 72, 76, 79, 83, 85, 86, 87, 91, 92, 93, 102, 128, 131, 138, 143, 147, 149, and 153.

[7] *See* Chase Decl. Exs. B & C, URL Nos. 31, 53, 103, 104, 106, 109, 117.

understand the Amended Complaint, any claims arising from these URLs should be dismissed.

### 3.   Claims Arising from URL 40 Should be Dismissed as De Minimis or Fair Use

URL 40 directs to a single page in an eight-page gallery titled "Shawn Mendes, Billie Eilish, and More Stars Support Global Climate Change Strike."  Each page of the gallery embeds a celebrity's Twitter or Instagram post supporting a September 2019 global climate strike.  One such Twitter post comes from Rolling Stones guitarist, Keith Richards, whose Twitter profile picture, included in a small circle in the embedded Tweet, appears to be Photograph 11.



In other words, Plaintiff is suing PopSugar merely because it embeds a Tweet from a celebrity who made Plaintiff's Photograph his avatar—something over which PopSugar has no control.[8] This is a *de minimis* and/or fair use, and therefore must be dismissed.

***First***, the use of Photograph 11 as Keith Richards' profile picture for his Tweet on the Global Climate Strike as it appears in URL 40 is plainly a *de minimis* use that cannot form the

---

[8] Indeed, the Twitter user's avatar *necessarily* must be displayed as part of an embedded Tweet.  *See* Twitter Developer Terms of Use, "Display Requirements: Tweets."  ("The Tweet author's profile picture, @username, and display name must always be displayed and link to the user's Twitter profile. . . . The Tweet author's avatar must be positioned to the left of the author's name and @username.").  The Court can take judicial notice of these publicly accessible Terms of Use.  *See* Fed. R. Evid. 201(b)(2); *Force v. Facebook, Inc.*, 934 F.3d 53, 59 n.5 (2d Cir. 2019) (holding that Facebook's publicly available Terms of Service and Community Standards were subject to judicial notice).

basis of a copyright infringement claim.  The *de minimis* use doctrine provides that "if the copying is . . . so 'trivial' as to fall below the quantitative threshold of substantial similarity, the copying is not actionable."  *Gottlieb*, 590 F. Supp. 2d at 632; *see also On Davis v. Gap, Inc.*, 246 F.3d 152, 173 (2d Cir. 2001) ("Trivial copying is a significant part of modern life. . . .  Because of the *de minimis* doctrine, in trivial instances of copying, we are in fact not breaking the law.  If a copyright owner were to sue the makers of trivial copies, judgment would be for the defendants."); *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997) ("*[D]e minimis* can mean that copying has occurred to such a trivial extent as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying.").  A court may apply the *de minimis* use doctrine on a motion to dismiss.  *Gottlieb*, 590 F. Supp. 2d at 632 (citing cases).

In *Gottlieb*, for example, the plaintiff claimed that the defendant infringed his copyright in a pinball machine by including the machine in a set for the film *What Women Want*.  Although the plaintiff claimed that the machine appeared in the film for a total of about three minutes, the court dismissed the copyright claim, finding that the use of the machine was "*de minimis* as a matter of the law."  *Id.* at 630–32.  The court explained that the machine "is always in the background; it is never seen in the foreground.  It never appears by itself or in a close-up."  *Id.* at 632.  As a result, "the 'average lay observer' would not be able to discern any distinctive elements of [the plaintiff's] [d]esigns . . . .  The unique expressive element of the [d]esigns is not discernable in those brief moments when the backglass is visible."  *Id.*  at 633.

The logic of *Gottlieb* applies equally here.  Keith Richards' Twitter avatar is not the focus of the Tweet but is included in a small circle in the upper-left corner of the post as an automatic feature of Twitter embedding.  The unique and creative features of Plaintiff's Photograph are not

visible in this small, cropped rendering of the Photograph.  Indeed, it is hard to imagine when the *de minimis* defense would apply if not to such a trivial and incidental instance of copying such as this.  Any other conclusion would render *every* individual who embeds a Tweet liable for copyright infringement based solely on the Twitter user's choice of avatar.  Plaintiff's claim for copyright infringement based on this Photograph should be dismissed.

**Second**, in the alternative, URL 40 is undoubtedly a protected fair use.  While the Copyright Act grants copyright owners a bundle of certain exclusive rights, including the right "to reproduce the copyrighted works in copies," 17 U.S.C. § 106, "the fair use of a copyrighted work. . . is not an infringement of copyright," 17 U.S.C. § 107.  As the Second Circuit has observed, the fair use doctrine protects "the ability of authors, artists, and the rest of us to express them—or ourselves by reference to the works of others, which must be protected up to a point." *Blanch v. Koons*, 467 F.3d 244, 249–50 (2d Cir. 2006).  In other words, the fair use defense allows for the use of copyrighted material in a reasonable manner for the purpose of disseminating information without the copyright owner's consent.  *See Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013).[9]

Section 107 of the Copyright Act sets forth four non-exclusive factors that courts must consider in determining whether a particular use of a copyrighted work is a fair use:

(1)     the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2)     the nature of the copyrighted work;

---

[9] The Second Circuit and other courts have held that, where fair use is established on the face of a complaint or by comparing the works at issue side-by-side, it may be decided by the court on a Rule 12(b)(6) motion to dismiss. *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016) (acknowledging that the allegations of the complaint may support pre-answer dismissal of a copyright infringement claim on fair use grounds); *see also Hughes v. Benjamin*, 437 F. Supp. 3d 382, 393-94 (S.D.N.Y. 2020) (dismissing complaint pursuant to Rule 12(b)(6) based on fair use defense after conducting a side-by-side analysis of the two works attached to the complaint).

(3)     the amount and substantiality of the portion used in relation to the copyrighted

work as a whole; and

(4)     the effect of the use upon the potential market for or value of the copyrighted work.

These four factors must be considered together, and none may be "treated in isolation."

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994).  Further, "[b]ecause this is not a

mechanical determination, a party need not 'shut-out' her opponent on the four factor tally to

prevail."  *Wright v. Warner Books, Inc.*, 953 F.2d 731, 740 (2d Cir. 1991).

The United States Supreme Court has recognized that one quintessential example of fair

use is the "incidental and fortuitous reproduction, in a newsreel or broadcast, of a work located in

the scene of an event being recorded."  *See Sony Corp. of Am. v. Universal City Studios, Inc.*,

464 U.S. 417, 478 n.29 (1984) (citation omitted).   In *Italian Book Corp. v. American

Broadcasting Cos.*, 458 F. Supp. 65 (S.D.N.Y. 1978), for example, the court held that the use of

plaintiff's song when it was incidentally captured in the background of a parade being filmed for

a television news segment, constituted a "fair use."  The court reasoned that the television news

segment was not in competition with the plaintiff, there was no "loss of profit or lessening of the

song's value" as a result of the use, and the song was played in the segment merely as an

"incidental and fortuitous reproduction."  *Id.* at 69–71 (citation omitted).  The reasoning of

*Italian Book Corp.* is equally relevant here.

Looking to the first factor, the purpose and character of the use, the central question is

"whether and to what extent the new work is transformative," *Campbell*, 510 U.S. at 579,

meaning whether the new use "communicates something new and different from the original, or

expands its utility," *Authors Guild v. Google Inc.*, 804 F.3d 202, 214 (2d Cir. 2015).  Indeed,

"the more transformative the new work, the less will be the significance of other factors, like

commercialism, that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579.  A work is transformative when the new work does not "merely supersede[] the objects of the original creation" but "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Id.*  Notably, "commentary or criticism [on a work] is not required to render a use transformative where 'the two works have different messages and purposes.'" *Walsh v. Townsquare Media, Inc.*, No. 19-CV-4958 (VSB), 2020 WL 2837009, at *6 (S.D.N.Y. June 1, 2020) (first alteration added) (quoting *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014)).

Here, the use of the Photograph in a Twitter avatar is entirely transformative.  Plaintiff initially took the portrait of Richards in 2015 for the cover of Mojo Magazine in order to promote Richards' new solo album.[10]  By contrast, the Photograph, as it appears on PopSugar's website, was used only by virtue of its inclusion in a Tweet in a slideshow discussing celebrities' reactions to the 2019 global climate strike.  The Photograph of Richards, along with his Twitter handle, are automatically included in the embedded Tweet in order to identify the author of the Tweet.  Thus, the use of the Photograph is an entirely incidental, transformative use, and the first factor favors a finding of fair use.

Turning to the second factor, "the nature of the copyrighted work," courts generally look at (1) "whether the work is expressive or creative . . . or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational," and (2) "whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower." *Blanch*, 467 F.3d at 256 (quoting 2 Howard B. Abrams, The Law of Copyright, § 15:52 (2006)).  Here, even if Plaintiff can show that the Photograph of Richards

---

[10] *See* Mojo 262, September 2015, available at: https://www.mojo4music.com/articles/21145/mojo-262-september-2015?rq=keith%20richards.

has creative value, Plaintiff cannot dispute that this Photograph has been published and widely disseminated. Indeed, the very fact that Richards uses the Photograph as his Twitter avatar establishes this point. *See Walsh*, 2020 WL 2837009, at *7 (noting that, because the photograph was "previously published by Cardi B on her Instagram," the second fair use factor favored the defendant); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003) (use of a published work is "more likely to qualify as fair use because the first appearance of the artist's expression has already occurred"). This factor therefore favors Defendants.

The third fair use factor, the amount and substantiality of the work used, clearly favors a finding of fair use. Photograph 11 appears in a small, cropped circle, showing only a close-up image of Richards' face. The actual Photograph, by contrast, shows Richards' full upper body and the hat he is wearing. None of the detail of the Photograph can be discerned in the small Twitter image. Accordingly, because only a minimal portion of the work appears in the Twitter avatar, the third factor favors Defendants.

Finally, as in *Italian Book Corp.*, the fourth factor supports a finding of fair use because the small Twitter avatar of Richards is not a substitute for or competitor of the original work. The use of the Photograph in the avatar does not lessen the value of Plaintiff's work or usurp the market for the work, since no one looking to license the image would use this Twitter avatar instead of the actual Photograph. *See Walsh*, 2020 WL 2837009, at *8 (holding that plaintiff's photograph, which appeared within a third-party Instagram post was a fair use and reasoning "because the Photograph did not appear on its own, but as part of the Post, alongside text and another image, it is implausible that Defendant's use would compete with Plaintiff's business or affect the market or value of her work"); *Clark v. Transp. Alternatives, Inc.*, No. 18 Civ. 9985 (VM), 2019 WL 1448448, at *4 (S.D.N.Y. Mar. 18, 2019) (holding that screenshot of plaintiff's

photograph as it appeared at the top of a news article was a fair use, explaining "the Screenshot does not compete against the Photograph . . . there is little risk that someone looking to license or purchase an image of a dockless bicycle would select the Screenshot instead of the Photograph").

Because the four factors favor a finding of fair use, claims arising from URL 40 should be dismissed.

### 4.     Claims Arising From 34 URLs Are Barred by the Statute of Limitations

Finally, Section 507(b) of the Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  To determine when a claim has "accrued," courts in the Second Circuit utilize the "discovery rule," under which the statute of limitations begins to run once the copyright owner discovered or should have discovered with "reasonable diligence" the purported infringement.  *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124–25 (2d Cir. 2014).

At least one court in the Second Circuit recently held that the question of whether a plaintiff's complaint is time barred can be decided as a matter of law on a motion to dismiss.  In *Minden Pictures, Inc. v. BuzzFeed, Inc.*, 390 F. Supp. 3d 461 (S.D.N.Y. 2019), the plaintiff filed an infringement lawsuit based on BuzzFeed's use of forty of its photographs, twenty-four of which were used more than three years before the complaint was filed.  *See id.* at 466.  The court held that plaintiff "should have discovered, with the exercise of due diligence, that its copyright was being infringed within the statutory time period."  *Id.* at 467.  Plaintiff "provide[d] no explanation for its delayed filing of th[e] lawsuit beyond its allegation that it had no reason to discover the alleged infringement prior to 2017."  *Id.*; *see also Gunnells v. Teutul*, 392 F. Supp. 3d 451, 453 (S.D.N.Y. 2019) (refusing to enter default judgment when complaint sought damages for purported infringements that occurred six to eight years before the action was filed); *Michael Grecco Prods., Inc. v. Ziff Davis LLC*, No. 19-cv-4776, Dkt. 34 at 2 (C.D. Cal. Nov. 18,

2019) (order dismissing complaint under discovery rule where it did not contain "any facts that would suggest that [plaintiff] had no reason to know of the infringement prior to [the date of discovery] . . . . There is no allegation that the alleged infringement was anything but open and discoverable since the first postings in 2014.").

Here, as in *Minden*, Plaintiff entirely fails to state when he discovered PopSugar's secondary uses of the Photographs, let alone why he could not have discovered the uses within the three-year statute of limitations.  The allegedly infringing uses appeared on PopSugar's website since the dates of their publication, sometimes over ten years ago.  Permitting Plaintiff to proceed with this case based on uses that occurred more than three years ago, without having pled *any* facts about why the suit was so delayed, would render the statute of limitations a virtual nullity.  Even more, it would put Defendants in the impossible position of defending a lawsuit for which much of the information about the alleged infringing uses may have been deleted years ago as a result of standard record retention policies.  Because Plaintiff has provided no information about his discovery of the secondary uses, claims arising from uses that occurred more than three years ago are time-barred and should be dismissed

## C.     Plaintiff Fails to Plausibly Allege a Claim for Secondary Copyright Infringement

In order to state a contributory infringement claim, a plaintiff must allege that a defendant "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another."  *See Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).  In so doing, the plaintiff must show that the defendant "substantially" participated in the infringement.  *Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493 (LAP), 2019 WL 5199431, at *24 (S.D.N.Y. Sept. 30, 2019).  In other words, he must make "fact-based allegations that the defendant authorized, or played a part in the alleged infringement" and the "authorization or assistance [bore] a direct relationship to the infringing

acts." *Id.* (internal quotation marks and citations omitted).  To state a claim for vicarious infringement, a plaintiff must allege that the defendant "profit[ed] from direct infringement while declining to exercise a right to stop or limit it."  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (citation omitted).

Under either theory of secondary liability, however, Plaintiff must first establish an instance of direct infringement.  *See*, *e.g.*, *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 40 (2d Cir. 2005) ("[T]here can be no contributory infringement absent actual infringement."); *Williams v. A & E Television Networks*, 122 F. Supp. 3d 157, 165 (S.D.N.Y. 2015) ("Because plaintiff has not plausibly alleged a claim of direct copyright infringement, her claims of contributory and vicarious copyright infringement must be dismissed.").  Here, the only direct infringement that Plaintiff alleges is Defendants' purported direct infringement of the Photographs through the 159 URLs.  *See* Am Compl. Ex. B.  But a defendant cannot be simultaneously liable for direct and secondary infringement based on the same conduct.  *See Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 133 (2d Cir. 2008) (explaining that there must be a "meaningful distinction between direct and contributory copyright infringement").[11]  Because Plaintiff fails to plead any other instance of direct infringement by a third-party, his secondary liability claims should be dismissed.

Further, even if Plaintiff had alleged an underlying direct infringement, Plaintiff's claims

---

[11] To the extent Plaintiff seeks to hold Group Nine secondarily liable for PopSugar's infringement, as explained in Section I.A., *supra*, Plaintiff has made *no* allegations about Group Nine's conduct that could support such a claim. Simply serving as PopSugar's parent company is not enough to state a claim for secondary infringement.  *See Mayimba Music, Inc. v. Sony Corp. of Am.*, No. 12 Civ. 1094 (AKH), 2014 WL 5334698, at *13 (S.D.N.Y. Aug. 19, 2014) (dismissing contributory and vicarious infringement claims against parent company when plaintiff "failed to offer evidence showing that any of the defendants intentionally induced or encouraged the direct infringement of Plaintiff's copyright by another" and failed to allege that parent company "had a right to stop the infringement of the other defendants"); *Dauman*, 1998 WL 54633, at *6 ("[A] parent corporation can be liable only if there is a substantial continuing involvement by the parent specifically with . . . respect to the allegedly infringing activity of the subsidiary."); *Banff*, 869 F. Supp. at 1110 ("[T]o prevail against a parent corporation on the theory of vicarious copyright infringement, the plaintiff must present evidence that the parent has done more in relation to the infringing activity than simply be the parent.").

for contributory and/or vicarious infringement would still fail because his allegations do nothing more than parrot the bare elements of those claims.  With respect to contributory infringement, Plaintiff claims that "Defendants knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and distribution of the Subject Photography."  Am. Compl. ¶ 22.  And with respect to vicarious infringement, Plaintiff claims that Defendants "had the right and ability to supervise the infringing conduct and . . . had a direct financial interest in the infringing conduct."  *Id.* ¶ 23.  In both cases, Plaintiff fails to allege a *single* concrete activity undertaken by either Defendant that would support his claim.  This simply is not enough to withstand a motion to dismiss.  *See Premier Fabrics, Inc. v. Woodland Trading Inc.*, 42 F. Supp. 3d 549, 555 (S.D.N.Y. 2014) ("Apart from the conclusory allegation that '[d]efendants knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction . . . the First Amended Complaint makes no allegations of [defendant's] knowledge or the scope of its control, if any, over the allegedly infringing activity."); *Joe Hand Promotions, Inc. v. Shaikh*, No. 19-CV-3500 (MKB), 2020 WL 1878165, at \*5 (E.D.N.Y. Mar. 4, 2020) ("[T]he weight of authority in this Circuit requires more than a formulaic recitation that the . . . defendants exercised control.") (citation and internal quotation marks omitted).

Accordingly, Count II of the Amended Complaint should be dismissed in its entirety.

**D.**     **Plaintiff Fails to Plausibly Allege a Claim Under 17 U.S.C. § 1202**

Plaintiff's third claim for relief—that Defendants violated the copyright management provisions of 17 U.S.C. § 1202—is similarly deficient.

As a preliminary manner, § 1202 contains two separate prohibitions concerning copyright management information.  Section 1202(a) provides: "No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement—(1) provide copyright management information that is false, or (2) distribute or import for distribution copyright information that is

false." *See* 17 U.S.C. § 1202(a).  Section 1202(b), by contrast, states:

> No person shall, without the authority of the copyright owner or the law—
> (1) intentionally remove or alter any copyright management information;
> (2) distribute or import for distribution copyright management information
> knowing that the copyright management information has been removed or altered
> without authority of the copyright owner or the law; or (3) distribute, import for
> distribution, or publicly perform works . . . knowing that copyright management
> information has been removed or altered without authority of the copyright owner
> or the law.

*See* 17 U.S.C. § 1202(b).

Here, it is unclear whether Plaintiff intends to assert a claim under § 1202(a) or (b).  He

first claims generally that "Defendants, and each of them, removed Plaintiff's copyright

management information . . . from the Subject Photography, *and/or* added false copyright

management information to the Subject Photography, before distributing and publishing same."

Am. Compl. ¶ 29 (emphasis added).  Three paragraphs later, he then states, "[w]hen Defendants

distributed and published the Subject Photography, they knowingly provided and/or distributed

false copyright management information in violation of 17 U.S.C. § 1202(a)," wholly ignoring

§ 1202(b).  *See id.*  ¶ 32.

Regardless of which claim Plaintiff intends to bring, his pleading is inadequate.  Under

§ 1202(a), Plaintiff must "plausibly allege that defendant knowingly provided false copyright

information *and* that the defendant did so with the intent to induce, enable, facilitate, or conceal

an infringement."  *See Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018).  The only

allegations that Plaintiff includes in support of his claim, however, is that "Defendants, and each

of them, distributed and published the Subject Photography via websites bearing the URL(s)

depicted in Exhibit B, hereto, under its own name," Am. Compl. ¶ 30, and did so "knowingly."

*Id.* ¶ 32.  In essence, Plaintiff appears to be saying that merely because the photographs appeared

on PopSugar's website, they were published with "false copyright management information."

This argument is illogical as it would turn every copyright infringement claim in which the subject photograph was published on a website into a § 1202(a) violation.  Further, Plaintiff alleges nothing in support of the second element of the claim—that Defendants published falsified copyright management information "with the intent to induce, enable, facilitate, or conceal an infringement."  Accordingly, any claim arising under § 1202(a) must be dismissed.

To the extent Plaintiff intends to make a claim under § 1202(b), that claim is similarly deficient.  In order to state a claim for removal of copyright management information, a plaintiff must plausibly allege: "(1) the existence of CMI on the [infringed work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally."  *See Hirsch v. CBS Broad. Inc.*, No. 17 Civ. 1860 (PAE), 2017 WL 3393845, at *8 (S.D.N.Y. Aug. 4, 2017).  While "[c]ourts must be 'lenient in allowing scienter issues . . . to survive motions to dismiss," *see id.* (internal citation omitted), threadbare complaints that merely re-allege the elements of a cause of action are insufficient, *see Chevrestt v. American Media, Inc.*, 204 F. Supp. 3d 629, 631–32 (S.D.N.Y. 2016) (holding that a complaint that simply repeated the § 1202(b) standard was inadequate because "[i]t contain[ed] no factual allegations supporting those conclusions (speculations?)" including no factual allegations "supporting an inference that [the] CMI alteration or removal was done intentionally").

Here, Plaintiff does not allege from where the Defendants obtained the Photographs or that there was actually CMI in any of the Photographs in these original sources.  Instead, he only states that the Photographs were "*routinely* published with attribution, credit, and other copyright management information identifying Plaintiff as the author."  *See* Am. Compl. ¶ 28 (emphasis added).  He provides no screenshots or other evidence comparing the initial source to each of the Photographs on PopSugar in order to show that Defendants removed the information that

appeared all, much less intentionally.   Any § 1202(b) claim, therefore, fails to meet the plausibility standard and should be dismissed.

## II.

## MOTION FOR A MORE DEFINITE STATEMENT

In the alternative, Defendants request an order requiring that Plaintiff further amend his complaint with a more definite statement of the claims since the Amended Complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e).   As explained above, the Amended Complaint's non-specific, boilerplate allegations (which mirror those made in various other infringement actions filed by Plaintiff around the same time as he filed this one) and list of 159 URLs fail to provide Defendants with notice of uses that allegedly infringed each of the sixty-one images attached to the Amended Complaint.   Accordingly, to the extent the Court does not dismiss the Amended Complaint, it should order Plaintiff to amend his complaint to include, at a minimum:

1. **Facts sufficient to put Defendants on notice of the allegedly infringing uses (such as screenshots of the alleged infringements)**: Although Plaintiff includes hundreds of plain-text URLs that purportedly direct to infringing posts from the PopSugar website in his Amended Complaint, not all pages on the PopSugar website are static.   Whether the URLs were mistyped by Plaintiff or the contents of the webpages to which the URLs directed changed, Defendants cannot be sure that they are viewing the same webpages that Plaintiff complains of unless Plaintiff provides screenshots of those pages.

2. **Registration information for any Photographs that remain in suit (including registration date, first publication date, and date of allegedly infringing use)**: Without this information, Defendants cannot ascertain that the Photographs were

registered prior to the date Plaintiff filed the initial complaint, or that they were registered within three months from when they were first published or prior to the dates that the allegedly infringing uses occurred.   For the reasons explained above, this information is crucial to Plaintiff's copyright claim and statutory damages plea.

3.   **Dates that Plaintiff discovered each purportedly infringing use**: It is clear on the face of thirty-four URLs that they were published more than three years ago. It is therefore incumbent upon Plaintiff to plead when he claims to have discovered the infringing uses in order to avoid application of the statute of limitations.

<u>**CONCLUSION**</u>

Plaintiff's Amended Complaint is nothing more than a confusing recital of numerous causes of action that are largely inapplicable to the facts at hand and that fail to allege a plausible claim for relief.   Accordingly, Defendants respectfully request that this Court dismiss the Amended Complaint in its entirety.   In the alternative, Defendants request that Plaintiff supplement the Amended Complaint to provide screenshots of the alleged infringements, registration information, and information about the discovery of infringements, so as to allow Defendants to fully and accurately answer the portions of the Amended Complaint that survive their motion to dismiss.

Dated:   July 27, 2020
         New York, New York

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ Rachel F. Strom*
    Rachel F. Strom
    Jeremy A. Chase
    Amanda B. Levine

1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax
rachelstrom@dwt.com
jeremychase@dwt.com
amandalevine@dwt.com

*Attorneys for Defendants*
*Group Nine Media, Inc. and PopSugar Inc.*