**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK SELIGER, an individual, | Civil Action No.: 1:20-cv-02965-JPO |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| GROUP NINE MEDIA, INC., a Delaware Corporation; POPSUGAR INC., a Delaware Corporation; and DOES 1-10, inclusive, | |
| Defendants. | |

i

# **TABLE OF CONTENTS**

I.     THE MOTION FAILS.................................................................................................1

II.    LEGAL STANDARD...............................................................................................2

III.   ARGUMENT.............................................................................................................3

    A.  Seliger's direct copyright infringement claims are sufficiently pled......................3

        1.  Seliger sufficiently pleads ownership and
           registration of the photographs at issue ...........................................................3

        2.  Seliger sufficiently pleads infringement ...................................................5

        3.  Seliger's claims fall within the statute of limitations........................................8

    B.  Group Nine is a proper defendant ........................................................................10

    C.  Seliger's vicarious and contributory
        copyright infringement claims are well-pled ........................................................12

    D.  Seliger's DMCA claims are adequately pled........................................................14

    E.  Fair use is inapplicable and in any event cannot be decided at this stage ............15

    F.  Defendants cannot prevail on a fair use claim ......................................................16

        1.  The "purpose and character" of the
           use militates against a finding of fair use..........................................................16

           a)  *Defendants used certain Subject Photography*
               *for precisely the same purpose as Seliger sought* .....................................16

           b)  *Illustrative aids are not transformative*
               *and do not support the first fair use factor* ...............................................17

           c)  *Defendants' commercial use undermines the first factor* ..........................18

        2.  The creative nature of the Photograph favors Seliger......................................20

        3.  Defendants exploited Seliger's entire works,
           which does not support a finding of fair use....................................................20

        4.  Seliger will be able to prove market harm......................................................20

IV.    LEAVE TO AMEND SHOULD BE GRANTED .....................................................21

V.     THIS MOTION FAILS...........................................................................................21

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Adobe Sys. Inc. v. Christenson*,
  809 F.3d 1071 (9th Cir. 2015) ............................................................................................. 7

*Am. Protein Corp. v. AB Volvo*,
  844 F.2d 56 (2d Cir. 1988) .................................................................................................. 11

*APL Microscopic, LLC v. United States*,
  144 Fed. Cl. 489 (2019) ................................................................................................... 9, 10

*Arista Records LLC v. Lime Grp. LLC*,
  784 F. Supp. 2d 398 (S.D.N.Y. 2011) ................................................................................ 12

*Arista Records LLC v. Usenet.com, Inc.*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009) ................................................................................ 12

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) .................................................................................. 2

*Authors Guild v. Google, Inc.*,
  804 F.3d 202 (2d Cir. 2015) ................................................................................................ 16

*Sohm v. Scholastic Inc.*,
  959 F.3d 39, 50 (2d Cir. 2020) ............................................................................................. 8

*Baraban v. Time Warner, Inc.*,
  2000 WL 358375 (S.D.N.Y. Apr. 6, 2000) ......................................................................... 20

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*,
  297 F. Supp. 3d 339 (S.D.N.Y. 2017) ................................................................................ 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007) .................................................................................. 3

*Blagman v. Apple Inc.*,
  2013 WL 2181709 (S.D.N.Y. May 20, 2013) ...................................................................... 5

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*,
  196 F. Supp. 3d 395 (S.D.N.Y. 2016) ........................................................................... 16, 17

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569, 114 S. Ct. 1164 (1994) ................................................................................ 20

*Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*,
  150 F.3d 132 (2d Cir. 1998) ................................................................................................ 17

*Chen v. Major League Baseball Props., Inc.*,
  798 F.3d 72 (2d Cir. 2015) .................................................................................................... 2

*Clark v. Transportation Alternatives, Inc.*,
  2019 WL 1448448 (S.D.N.Y. Mar. 18, 2019) .................................................................... 17

*Ferdman v. CBS Interactive Inc.*,
  342 F. Supp. 3d 515 (S.D.N.Y. 2018) ................................................................................ 18

*Fischer v. Forrest*,
  2015 WL 195822 (S.D.N.Y. Jan. 13, 2015) .................................................................. 14
*Fox News Network, LLC v. Tveyes, Inc.*,
  883 F.3d 169 (2d Cir. 2018) ......................................................................................... 16
*Free Speech Sys., LLC v. Menzel*,
  390 F. Supp. 3d 1162 (N.D. Cal. 2019) ........................................................................ 15
*Friedman v. Live Nation Merch., Inc.*,
  833 F.3d 1180 (9th Cir. 2016) ................................................................................. 7, 11
*Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*,
  443 F.2d 1159 (2d Cir. 1971) ................................................................................. 12, 13
*Goodman v. Universal Beauty Prod. Inc.*,
  2018 WL 1274855 (S.D.N.Y. Mar. 9, 2018) ................................................................... 9
*Graham v. Prince*,
  265 F. Supp. 3d 366 (S.D.N.Y. 2017) ............................................................................. 2
*Gunnells v. Teutul*,
  392 F. Supp. 3d 451 (S.D.N.Y. 2019) ............................................................................. 8
*Hamil Am. Inc. v. GFI*,
  193 F.3d 92 (2d Cir. 1999) ............................................................................................. 5
*Harper & Row Publishers, Inc. v. Nation Enterprises*,
  471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985) ...................................... 15, 19
*Infinity Broad. Corp. v. Kirkwood*,
  150 F.3d 104 (2d Cir.1998) .......................................................................................... 20
*Kelly v. L.L. Cool J.*,
  145 F.R.D. 32 (S.D.N.Y.1992) ....................................................................................... 3
*Lowendahl v. Baltimore & O.R. Co.*,
  247 A.D. 144, 157, 287 N.Y.S. 62 (App. Div.), *aff'd*, 272 N.Y. 360, 6 N.E.2d 56 (1936) ........ 11
*Masi v. Moguldom Media Grp. LLC*,
  2019 WL 3287819 (S.D.N.Y. July 22, 2019) .................................................................. 9
*McGucken v. Newsweek LLC*,
  2020 WL 2836427 (S.D.N.Y. June 1, 2020) ................................................................. 18
*Michael Grecco Prods., Inc. v. Valuewalk, LLC*,
  345 F. Supp. 3d 482 (S.D.N.Y. 2018) ..................................................................... 12, 17
*Minden Pictures, Inc. v. Buzzfeed, Inc.*,
  390 F. Supp. 3d 461 (S.D.N.Y. 2019) ............................................................................. 8
*Murphy v. Millennium Radio Grp. LLC*,
  650 F.3d 295 (3d Cir. 2011) ........................................................................................ 14
*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ........................................................................................... 2
*Otto v. Hearst Commc'ns, Inc.*,
  345 F. Supp. 3d 412 (S.D.N.Y. 2018) ........................................................................... 17
*Palmer Kane LLC v. Scholastic Corp.*,
  2013 WL 709276 (S.D.N.Y. Feb. 27, 2013) .................................................................... 4

iv

*Palmer/Kane LLC v. Benchmark Educ. Co. LLC,*
  2020 WL 85469 (S.D.N.Y. Jan. 6, 2020)....................................................................... 5, 7
*People by Vacco v. Garban, LLC, No.,*
  1999 WL 496182 (N.Y. Sup. Ct. June 17, 1999) ............................................................ 11
*Petrella v. Metro-Goldwyn-Mayer,*
  572 U.S. 663 (2014) ......................................................................................................... 9
*Pilla v. Gilat,*
  2020 WL 1309086, fn. 9 (S.D.N.Y. Mar. 19, 2020) .................................................... 5, 6
*Ronzani v. Sanofi S.A.,*
  899 F.2d 195 (2d Cir. 1990) ........................................................................................... 21
*Sony Corp. of Am. v. Universal City Studios, Inc.,*
  464 U.S. 417, 104 S. Ct. 774 (1984) ............................................................................. 19
*TCA Television Corp. v. McCollum,*
  839 F.3d 168 (2d Cir. 2016) ...................................................................................... 2, 20
*Walsh v. Townsquare Media, Inc.,*
  2020 WL 2837009 (S.D.N.Y. June 1, 2020).................................................................. 18
*Warren v. John Wiley & Sons, Inc.,*
  952 F. Supp. 2d 610 (S.D.N.Y. 2013) .......................................................................... 3, 4
*Weissmann v. Freeman,*
  868 F.2d 1313 (2d Cir.1989)........................................................................................... 19
*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,*
  933 F.2d 131 (2d Cir. 1991) ........................................................................................... 11
*Worldwide Church of God v. Philadelphia Church of God, Inc.,*
  227 F.3d 1110 (9th Cir. 2000) ........................................................................................ 19
*Wu v. John Wiley & Sons, Inc.,*
  2015 WL 5254885 (S.D.N.Y. Sept. 10, 2015) ................................................................. 9
*Yurman Design, Inc. v. PAJ, Inc.,*
  262 F.3d 101 (2d Cir. 2001) ............................................................................................. 2

**Statutes**

17 U.S.C. § 1202 ................................................................................................... 14, 15
17 U.S.C. § 1202(a) ..................................................................................................... 14
17 U.S.C. § 1202(a)-(b) ............................................................................................... 15
17 U.S.C. § 1202(c) ..................................................................................................... 14
28 U.S.C. § 1498(b) ..................................................................................................... 10

**Rules**

Fed. R. Civ. P. 8 ..................................................................................................... 3, 4, 5
Fed. R. Civ. P. 8(a)(2) .................................................................................................... 2
Fed. R. Civ. P. 12(b)(6).............................................................................................. 2, 7
Fed. R. Civ. P. 15 ......................................................................................................... 21

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

<u>**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION**</u>

**I.      The motion fails.**

Defendants Group Nine Media, Inc. ("Group Nine") and PopSugar, Inc.'s ("PopSugar") Motion to Dismiss ("Motion") lacks merit and must be denied. Plaintiff Mark Seliger is a highly acclaimed portraiture photographer whose works have appeared in major national publications and museums throughout the world. PopSugar is a "clickbait" website that keeps its editorial costs low by engaging in massive content piracy. PopSugar, like other "clickbait" site operators, engages in the regular and systematic copying of photography and content from third-party artists and writers. It then republishes and displays this purloined content along with paid advertising and without providing compensation (or even notice) to the original artists and writers. PopSugar has been the subject of numerous intellectual property lawsuits, including one action in which it was claimed that PopSugar stole "millions" of photographs from Instagram artists and influencers and then monetized those photographs to drive revenue.[1]

This case lays bare PopSugar's abhorrent business practices. Seliger created and owns valid copyright registrations in 61 portraits of various celebrities (the "Subject Photography"), each of which is a highly prominent work of art. Seliger did not grant Defendants a license to use the Subject Photography, yet Defendants forged ahead with reproducing, displaying, and publishing Seliger's proprietary Subject Photography as key art for articles on their website alongside commercial advertising in *approximately 159 instances* (the "Infringing Articles").

---

[1] See https://www.theverge.com/2018/4/19/17252196/popsugar-instagram-stolen-affiliate-links-photos-rewardstyle-shopstyle-response

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

To obfuscate this massive misappropriation, Defendants offer several baseless arguments, none of which have merit.  Seliger's First Amended Complaint ("Complaint") adequately alleges his copyright infringement and ancillary claims against both Defendants. (Dkt. #7.) Because the Complaint adequately pleads all facts and theories supporting Seliger's claims, and must be taken as true at the pleading stage of the litigation, Defendants' attack on the sufficiency of Seliger's pleadings fails.

## II.     Legal standard

A complaint is sufficient if it includes a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party may move to dismiss "for failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must construe "the complaint liberally, accepting all factual allegations as true, and drawing all reasonable inferences in the plaintiff's favor." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016), *quoting Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 76 (2d Cir. 2015). Additionally, a pleading is adequate if it contains sufficient factual matter that, if accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Thus, in order to survive a motion to dismiss, a complaint based on copyright infringement must allege "both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant[s]." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001). And although it is "highly unlikely [] that a fair use affirmative defense can be addressed on a motion to dismiss, [a] [c]ourt reviews [a defendant's] allegedly infringing uses of [a plaintiff's work] by considering the four fair use factors in light of the factual allegations of the Complaint and its exhibits." *Graham v. Prince*, 265 F. Supp. 3d 366, 379 (S.D.N.Y. 2017), *citing TCA Television Corp. v. McCollum*, 839 F.3d

168, 178 (2d Cir. 2016). And where, as here, a plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Ashcroft*, *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007). Seliger's Complaint ably meets the applicable standard.

### III.    Argument

Seliger properly alleged that he owns valid copyrights and that Defendants have violated at least one of the exclusive rights granted to him by Section 106 of the Copyright Act. (Compl., ¶¶ 10-13.) His allegations are thus sufficient under Fed. R. Civ. P. 8. So owing, the Motion fails.

### A.    Seliger's direct copyright infringement claims are sufficiently pled.

#### 1.    Seliger sufficiently pleads ownership and registration of the photographs at issue.

Seliger specifically pled in his Complaint that he owns the Subject Photography and holds duly-issued copyright registrations covering the Subject Photography. (Compl., ¶¶ 10-11.) Nothing further is required to meet Rule 8's pleading standard.

To properly plead his claim of ownership, Seliger need only *allege* ownership of the allegedly infringed material. Specifically, a properly pled copyright infringement claim "must allege 1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, [and] 3) that the copyrights have been registered in accordance with the statute [...]" *Warren v. John Wiley & Sons, Inc*., 952 F. Supp. 2d 610, 616 (S.D.N.Y. 2013) quoting *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y.1992). Indeed, at the pleading stage, there is no requirement that Seliger provide registration certificates or registration numbers: "To require a plaintiff to do more [than allege ownership and registration], at the motion to dismiss stage, would be to subject copyright plaintiffs to a heightened level of

pleading, something this Court has been strictly proscribed from doing." *Warren*, 952 F. Supp. 2d at 617 (denying motion to dismiss on the basis that the copyright plaintiff did not include either registration certificate or registration numbers in the pleadings).[2] Seliger has met the lenient standard of alleging ownership and registration of the Subject Photography.

Seliger also identifies the Subject Photography as original artworks (Compl., ¶ 10) and includes multiple color images of the works. (Compl, Ex. A.) And Seliger alleges that he owns these copyrighted works and has federal registrations for the works. (Compl., ¶ 11.) Seliger thus properly plead ownership and registration of the Subject Photography.

If Seliger were required to provide copyright registration certificates, he could and would do so. Attached as Exhibit 1 is a schedule of the registration numbers. Declaration of Scott Alan Burroughs ("Burroughs Decl.") ¶ 3, Ex. 1. But, there has never been such a requirement. Because Seliger adequately identified, pictured, and plead ownership of all of the Subject Photography, and provided copyright registration information for each, he sufficiently plead ownership of the Subject Photography per Rule 8. Defendants fail to cite a single case indicating that the materials provided and facts plead are insufficient to adequately allege ownership. Defendants' challenge to these pleadings fail and the Motion must be denied.

///

---

[2]

*Accord Palmer Kane LLC v. Scholastic Corp.*, No. 12 CV 3890, 2013 WL 709276, at *3 (S.D.N. Y. Feb. 27, 2013) ("The complaint properly alleges that the copyrights have been registered in stating that the copyrights 'that are the subject of this action have been registered with the United States Copyright Office.' (para 15). Contrary to defendants' contentions, the complaint is not required to attach copies of registration certificates or provide registration numbers for all of the copyrights at issue in order to survive a motion to dismiss.").

## 2.   Seliger sufficiently pleads infringement.

Seliger alleged that he owns the images at issue, and that Defendants copied and exploited those works without Seliger's authorization. This is sufficient to plead infringement, which requires only that a plaintiff allege "(1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999) (citations omitted). Infringement comprises allegations that "(1) the defendant[s] ha[ve] actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999) (quotations and citations omitted). Thus, it "is well-established" that a copyright infringement complaint is sufficient so long as it identifies "(1) which specific original works are the subject of the copyright claim, (2) that [the] plaintiff owns the copyright in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts during what time the defendant infringed the copyright." *Palmer/Kane LLC v. Benchmark Educ. Co. LLC*, No. 18-CV-9369 (NSR), 2020 WL 85469, at *2 (S.D.N.Y. Jan. 6, 2020) (citation and quotation marks omitted). Seliger has met all of these requirements by alleging his creation, ownership, and registration of the Subject Photography and that Defendants republished said photography at certain PopSugar URLs and web addresses.

Notably, while "a plaintiff must describe the acts constituting copyright infringement with some specificity, copyright claims are not subject to particularity in pleading.... Thus copyright infringement must be pleaded in accordance with Rule 8, rather than the heightened pleading standard of Rule 9." *Pilla v. Gilat*, No. 19-CV-2255 (KMK), 2020 WL 1309086, at *9, fn. 9 (S.D.N.Y. Mar. 19, 2020), citing *Blagman v. Apple Inc.*, No. 12-CV-5453, 2013 WL

- 5 -

2181709, at *3 (S.D.N.Y. May 20, 2013) (citations and quotation marks omitted). Seliger has

met this standard.

Specifically, Seliger has alleged that he owns a suite of photographs, provided images of

these photographs, and alleged that Defendants published these photographs without his consent

on the PopSugar website at specific URLs and web addresses. (Compl., ¶ 12; Ex. B.) This is

sufficient to put Defendants on notice as to which copyrighted works are at issue and at which

specific locations online the infringing copies  appeared on PopSugar's website. "Taken as true,

these allegations state a claim for copyright infringement." *Pilla*, 2020 WL 1309086, at *9, fn. 9.

Defendants, media companies that pride themselves on their "unparalleled digital

distribution",[3] are aware of both the substance of the infringing content that they published at the

specified URLs and web addresses and the fact that such publication was infringement. Yet,

Defendant make the specious argument that they did not receive adequate notice of the infringing

PopSugar content at issue through the URLs and web addresses that are identified in the

complaint. This averment, though, is absurd because PopSugar is the party responsible for both

publishing and removing that very same disputed content from the URLs and web addresses that

are identified in the complaint. In other words, PopSugar is claiming that it is not on notice of

particular infringing content that it created, posted, hosted, monetized, and then removed from

specific URLS and web addresses identifying *their own website*.

But, even if true, this would not carry the day, because "[s]imply stated, Plaintiff has

alleged that specific works to which he owned the copyright were infringed upon, and by doing

---

[3] See *Group Nine to Acquire POPSUGAR, The Leading Digital Lifestyle Brand for Women*, GROUP
NINE MEDIA, Oct. 7, 2019 at 5:33 PM EDT, https://www.groupninemedia.com/press/group-nine-to-
acquire-popsugar-the-leading-digital-lifestyle-brand-for-women, last visited Aug. 10, 2020.

so, he has adequately pleaded this element under Rule 12(b)(6). *Palmer/Kane LLC*, 2020 WL 85469, at *2–3. There is no additional requirement that a copyright plaintiff provide an infringer with images of the infringing copies that the infringer created and published.

The URLs and web addresses identify specific content that PopSugar published and that is solely within the possession of PopSugar. To the extent that the infringing PopSugar material at issue is no longer online, that is due to Defendants removing the content from the internet. And, given that they removed their own content from their own website, they would certainly have that material in their possession. Indeed, given that PopSugar removed the infringing publications from the internet, the substance of said content is not just in Defendants possession, but is now *only* in their possession. Once PopSugar removes infringing content from the internet, it is accessible only by PopSugar.

As such, Seliger cannot be required to proffer at the initial pleading stage content that is now, as a direct result of PopSugar's acts, solely within the possession of PopSugar. Notably, even at the summary judgment stage, "fairness dictates that a litigant ought not have the burden of proof with respect to facts particularly within the knowledge of the opposing party." *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016), citing *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1079 (9th Cir. 2015). Surely, that holds true with even more weight at the initial pleading stage.

Seliger, in asserting ownership of certain copyrighted photographs, and asserting that PopSugar published those works without consent at certain PopSugar URLs and web addresses, has sufficiently pled infringement.

- 7 -

### 3.   Seliger's claims fall within the statute of limitations.

Defendants claim that the statute of limitations bars Seliger's copyright claims.

Defendants provide several cases to support their argument, but the authority that they cite is

distinguishable. In *Minden Pictures, Inc. v. Buzzfeed, Inc.,* 390 F. Supp. 3d 461 (S.D.N.Y. 2019),

the court held that the plaintiff, a licensing agency with a history of copyright litigation, should

have discovered, with the exercise of due diligence, that its copyright was being infringed within

the statutory time period. *Id.* at 467. Seliger has no such history and is not a licensing agency but

a working photographer. It would be virtually impossible for him to scour the entire internet to

identify each and every infringement and doing so would be a full-time job.

Defendants' citation to *Gunnells v. Teutul*, 392 F. Supp. 3d 451 (S.D.N.Y. 2019) is also

unpersuasive. There, the court, in considering a default judgment, initially refused to enter same

in a case involving infringements that occurred six to eight years before the action was filed, but

then allowed plaintiff to amend his complaint to include information regarding the dates of

discovery and entered default judgment. *Id.* at 454. This is inapposite.

Defendants also *fail* to cite to the Second Circuit's recent, binding authority addressing

the statute of limitations for copyright claims. In *Sohm v. Scholastic Inc.*, the Second Circuit

affirmed that for purposes of the statute of limitations, "an infringement claim does not 'accrue'

until the copyright holder discovers, or with due diligence should have discovered, the

infringement." 959 F.3d 39, 50 (2d Cir. 2020)(citation omitted). Seliger learned of the

infringement recently and certainly within the past three years. And there is no allegation in the

Complaint that he learned of the infringing conduct more than three years before its filing. As

such, per *Sohm*, he may pursue his claims and "gain retrospective relief running only three years

back from the date the complaint was filed." *Id.* at 52.

Moreover, Seliger's "knowledge about general interest" in his work "is not sufficient to constitute constructive discovery that his photographs of that prison were being infringed. *Masi v. Moguldom Media Grp. LLC*, No. 18 CIV. 2402 (PAC), 2019 WL 3287819, at *5 (S.D.N.Y. July 22, 2019), citing *Wu v. John Wiley & Sons, Inc*., No. 14 Civ. 6746 (AKH) (AJP), 2015 WL 5254885, at *6 (S.D.N.Y. Sept. 10, 2015) (knowledge that textbook publishers generally exceed licenses not sufficient to constitute constructive discovery of specific infringement). As such, Seliger "did not have knowledge of any infringement of his work and there was no reason for him to think, or duty for him to scour the internet to find out if, anyone was using his photographs without his consent. *Id.* ("If that were the expectation, then stock photo agencies and photographers likely would spend more money monitoring their licenses than they receive from issuing licenses."). Seliger properly asserted his claims within the statutory period.

Defendants' argument also fails because Defendants' infringing acts separately accrued within three years of the filing of the Complaint. Indeed, it is unclear when Defendants stopped displaying the infringing content at issue, but it was certainly within the last three years and, as such, Defendants violated Seliger's rights under Section 106 of the Copyright Act within the statute of limitations period. *See APL Microscopic, LLC v. United States*, 144 Fed. Cl. 489, 499 (2019)("each of these displays constituted a separate infringement on [plaintiff's] right of public display under § 106(5)[.]"); see also *Goodman v. Universal Beauty Prod. Inc*., No. 17-CV-1716 (KBF), 2018 WL 1274855, at *4 (S.D.N.Y. Mar. 9, 2018)("Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation.")

The Supreme Court has confirmed that "[w]hen multiple or successive acts of [copyright] infringement are alleged, the separate accrual rule may be implicated." *APL Microscopic, LLC,* at 494; *see also Petrella v. Metro-Goldwyn-Mayer*, 572 U.S. 663, 671-72 (2014) (explaining

- 9 -

that, "[u]nder [the separate-accrual rule], when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each new wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs."). So owing, each time Defendants displayed or distributed Seliger's photography to PopSugar readers, they infringed Seliger's rights, and it is alleged that this happened within the statute of limitations. *See APL Microscopic, LLC*, at 498 (each "act of transmitting the webpage—and the Work therein—to a user would infringe on [the distribution] right[.]").

 *APL Microscopic* is instructive, as it explained how ongoing online publication violates a photographer's exclusive Section 106 rights to display and distribute their work. In that case, NASA published the disputed photograph at issue on its webpage in 2004, where it remained until a date within the three-year statutory window. The court found that:

> each time a user viewed NASA's webpage, [the plaintiff's] copyrighted Work was displayed on the user's computer. Consequently, each of these displays constituted a separate infringement on [plaintiff's] right of public display under § 106(5), with each infringement starting a new limitations period under 28 U.S.C. § 1498(b). Taking as true APL's allegation that NASA displayed APL's work within three years prior to the filing of the complaint in this action, APL has therefore established subject-matter jurisdiction as to this claim.

*APL Microscopic, LLC*, at 499. Similarly, Defendants violated Seliger's exclusive display right and exclusive distribution right within the three-year statutory period.

 Per *Sohm* and the separate-accrual rule, Seliger's claims are not time-barred.

**B. Group Nine is a proper defendant.**

 Defendants also argue that Group Nine, as PopSugar's parent company, is not a proper defendant. But courts have found a parent company like Group Nine liable for its subsidiary's acts in instances where (1) the parent exercised "such control that the subsidiary 'has become a

mere instrumentality' of the parent, which is the real actor; (2) the control has been used to commit fraud or other wrong and, (3) the fraud or wrong results in an unjust loss or injury to plaintiff." *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir. 1991), *quoting Lowendahl v. Baltimore & O.R. Co.*, 247 A.D. 144, 157, 287 N.Y.S. 62 (App. Div.), aff'd, 272 N.Y. 360, 6 N.E.2d 56 (1936)urts consider adherence to corporate formalities, the degree of capitalization of the subsidiary, and the use of the subsidiary's funds by the parent. *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988). Courts also consider overlap in ownership, officers, directors and personnel, common office space or telephone numbers, the degree of discretion demonstrated by the subsidiary, whether the corporations are treated as independent profit centers and the payment or guarantee of the subsidiary's debts by the parent. *People by Vacco v. Garban, LLC*, No. 403179/98, 1999 WL 496182, at *3–4 (N.Y. Sup. Ct. June 17, 1999).

Here, at a minimum, there is overlap in personnel. Indeed, as Group Nine highlights on its website, as part of its acquisition of PopSugar, "Brian Sugar [founder and CEO of PopSugar] and Lisa Sugar [founder and president of PopSugar] will join the executive team of Group Nine and, as part of the deal, Brian Sugar and strategic investor Michael Moritz will join Group Nine's board of directors." *Group Nine to Acquire POPSUGAR, The Leading Digital Lifestyle Brand for Women*, GROUP NINE MEDIA, Oct. 7, 2019 at 5:33 PM EDT, https://www.groupninemedia.com/press/group-nine-to-acquire-popsugar-the-leading-digital-lifestyle-brand-for-women, last visited Aug. 10, 2020. This action is still in the early stages of litigation, and the parties have not yet engaged in discovery. Any further details regarding the foregoing claims are solely within the possession of Defendants and as a result Seliger is not required to plead same. See *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189 (9th Cir.

- 11 -

2016) (even at the summary judgment stage, a party need not submit facts solely within their adversary's possession, a rule that "accords with ... our general precedent that fairness dictates that a litigant ought not have the burden of proof with respect to facts particularly within the knowledge of the opposing party.")(citation omitted).

In addition, and importantly, the "legal standard for vicarious liability requires that [the vicarious infringer] had the *ability* to supervise or control the infringing activities." *Michael Grecco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 503 (S.D.N.Y. 2018)(emphasis in original)(citation omitted). Here, Group Nine certainly, once it took ownership of PopSugar, had the "ability" to ensure that photography was not exploited for commercial gain without the artist's consent. But, it chose not to do so. As discussed further below, this is textbook vicarious infringement and establishes Group Nine as a proper Defendant. Thus, Seliger's claims against Group Nine are sufficient.

## C.   Seliger's vicarious and contributory copyright infringement claims are well-pled.

Seliger's vicarious and contributory infringement claims are also sufficiently pled. To allege vicarious copyright infringement, a plaintiff must allege that the defendant[s] "[1] had the right and ability to supervise the infringing activity and ... [2] ha[ve] a direct financial interest in such activities." *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 434–35 (S.D.N.Y. 2011) (quoting *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). A party will be vicariously liable for the infringing acts of another if it has a "direct financial benefit and the right and ability to control infringement; it does not include an element of knowledge or intent on the part of the vicarious infringer." *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 156 (S.D.N.Y. 2009). Given that there is no knowledge requirement,

courts regularly find liability even in the absence of employer-employee relationships for related entities that committed infringing acts. *See, e.g., Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) (holding that "a person who has promoted or induced the infringing acts of [an artist] has been held jointly and severally liable as a 'vicarious' infringer, even though he has no actual knowledge that copyright monopoly is being impaired.")

Here, Seliger has alleged that Defendants "knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and distribution of the Subject Photography" and are "vicariously liable for the infringement [alleged in the Complaint] because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct." (Compl., ¶¶ 22, 23.) As the owner of a website receiving revenue from the infringing uses, Group Nine certainly had the right to oversee the infringing acts (which continued after Group Nine acquired PopSugar) and financially benefitted from the distribution, broadcast, and publication of Seliger's content.

Additionally, "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Gershwin Pub. Corp.*, 443 F.2d at 1162. As noted previously, Seliger specifically alleged that the Subject Photography was available "on Plaintiff's website or social media profiles, on other sites online, or in physical publications" prior to his discovery of the articles at issue. (Compl., ¶ 15.) Seliger has also alleged that Defendants had access to the Subject Photography through these websites and publications. Id. Defendants likely had or should have had knowledge of Seliger's ownership of the Subject Photography. Yet, Defendants reproduced, distributed, and published unauthorized copies of the Subject Photography. This establishes contributory liability. And as discussed above, additional details regarding the foregoing claims

are solely within the possession of Defendants and as a result Seliger is not required to plead

same under relevant authority. Thus, Seliger's claims of secondary vicarious and/or contributory

liability are sufficiently pled.

     **D.**     **Seliger's DMCA claims are adequately pled.**

     Seliger has sufficiently alleged that Defendants have violated the copyright management

provisions of 17 U.S.C. § 1202. Specifically, Seliger has alleged that "Defendants … removed

Plaintiff's copyright management information . . . from the Subject Photography, and/or added

false copyright management information to the Subject Photography, before distributing and

publishing same" and "[w]hen Defendants distributed and published the Subject Photography,

they knowingly provided and/or distributed false copyright management information in violation

of 17 U.S.C. § 1202(a)," (Compl., ¶¶ 29, 32.)

     Seliger's name is axiomatic authorship copyright management information ("CMI"), as it

is his (the author's) CMI expressed as a "printed gutter credit near the Image," which courts have

expressly stated constitutes CMI. *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 305 (3d

Cir. 2011)(photographer's name adjacent to photograph is CMI). It cannot be reasonably

disputed that Seliger's name "serves to identify the author of the work and therefore qualifies as

CMI under the statute." *Fischer v. Forrest*, No. 14 CIV. 1304 PAE, 2015 WL 195822, at *8

(S.D.N.Y. Jan. 13, 2015), citing 17 U.S.C. § 1202(c) (defining CMI to include "[t]he name of ...

the author of a work"); *Murphy*, 650 F.3d at 305 (holding that plaintiff's name constitutes

CMI)(remaining citations omitted). And Seliger specifically alleged that the Subject

Photography were "routinely published with attribution, credit, and other copyright management

information identifying Plaintiff as the author." (Compl., ¶ 28.) Here, the evidence, as depicted in

**Exhibit 2** hereto, reflects that Defendants removed Seliger's CMI in certain Subject Photography before publication. Burroughs Decl. ¶ 4, Ex. 2.

The images in **Exhibit 2**, which include non-inclusive exemplars, reflect that the authorized New York Magazine articles include a photography credit to "Mark Seliger," and that Defendants removed that credit in posting Seliger's photograph without Seliger's consent. In removing this credit and replacing it with their own "by Love And Sex" credit in at least one instance, Defendants violated Section 1202 in two discrete ways. 17 U.S.C. § 1202(a)-(b)(prohibiting both removal of CMI and the addition of "copyright management information that is false[.]). Thus, Seliger's Section 1202 claims are sufficient.

### E.     Fair use is inapplicable and in any event cannot be decided at this stage.

Defendants also cannot use fair use to justify their unauthorized commercial exploitation of the Subject Photography, especially at this early stage in litigation. A court cannot engage in the fair use inquiry until it has been presented with facts relevant to evaluating the fair use factors. *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985) (an appellate court may determine that the fair use defense applies as a matter of law when there are "facts sufficient to evaluate each of the statutory factors"). And, where, like here, material issues exist as to the "purpose and character" of the material at issue, "the extent to which the [material] was used for commercial purposes," and the effect the [material] had on the market for" the work, adjudication of the "fair use" defense is premature. *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1174 (N.D. Cal. 2019)(rejecting fair use defense at the pleading stage in a photograph case). Here, the parties have not engaged in any discovery, which will further establish that fair use is inapplicable in this instance, or otherwise developed a record that supports the "fair use" defense. Thus, Defendants' motion is premature.

**F.      Defendants cannot prevail on a fair use claim.**

Even if it were appropriate to address fair use now, Defendants' use of Seliger's work cannot be considered "fair" under the law. Defendants highlight *one* example out of *over one hundred* instances and argue that it should be considered fair use. But it is disingenuous for Defendants to argue that their exploitation should be considered fair use while copying select works from a photographer's portfolio numerous times without his permission. Indeed, "a judicial determination that [a defendant]'s inclusion of [a plaintiff's] [i]mage on its website was fair use would promote wholesale circumvention of copyright law." *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 406 (S.D.N.Y. 2016). The invocation of the "fair use" defense by an online publication that simply misappropriated a photographer's work, as Defendants have done here, has repeatedly been rejected by the courts. The defense fails.

**1.      The "purpose and character" of the use militates against a finding of fair use.**

The first factor in determining fair use is the purpose and character of the use. Defendants contend that they used certain Subject Photography as "incidental and fortuitous reproduction, in a newsreel or broadcast," but that is insufficient to establish fair use. (Motion, p. 14.) For the foregoing reasons, this factor weighs against Defendants.

**a)      Defendants used certain Subject Photography for precisely the same purpose as Seliger sought.**

In analyzing the purpose and character of the use, "the primary inquiry is whether the use 'communicates something new and different from the original or [otherwise] expands its utility,' that is, whether the use is 'transformative.'" *Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d 169, 176 (2d Cir. 2018) (*quoting Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir. 2015)). There was no transformative use here – PopSugar simply copied-and-pasted content

from a third-party. This was not fair use, because, with regard to photographs, "[u]sing a photo for the precise reason it was created does not support a finding that the nature and purpose of the use was fair." *Michael Grecco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 505 (S.D.N.Y. 2018)(citation omitted)

Additionally, Seliger licenses select photographs for media use. Indeed, most of the Subject Photography was licensed to other publications. Thus, Defendants exploited the Subject Photography, which Seliger had licensed to select media outlets for publication, in the same way that Seliger sought his work to be used. And "[u]sing a photo for the precise reason it was created does not support a finding that the nature and purpose of the use was fair." *BWP Media USA, Inc.* at 407. Because Defendants used the Subject Photography for the same purpose the images were created and did not add anything new or different, there was no transformation.

**b)      Illustrative aids are not transformative and do not support the first fair use factor.**

Despite the exactitude of its copying, Defendants allege that they transformed the Subject Photography in at least one instance because a select image was also used as a celebrity's Twitter avatar. But "[a]llowing a news publisher to poach an image from an individual's social media account for an article that does little more than describe the setting of the image does not promote 'the Progress of science and useful Arts.'" *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 433 (S.D.N.Y. 2018), *citing Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 141 (2d Cir. 1998) (citations omitted).

Defendants also cite *Clark v. Transportation Alternatives, Inc.*, No. 18 CIV. 9985 (VM), 2019 WL 1448448 (S.D.N.Y. Mar. 18, 2019), which held that a screenshot of plaintiff's photograph as it appeared at the top of a news article was a fair use. Id. at *4. But this authority is unconvincing, as Defendants did not use screenshots of Seliger's work displayed on other

publications or websites but rather the images themselves. Defendants' cite to *Walsh v.
Townsquare Media, Inc.*, No. 19-CV-4958 (VSB), 2020 WL 2837009 (S.D.N.Y. June 1, 2020)
fares no better. In *Walsh*, the court found that the defendant's use of plaintiff's photograph,
which appeared within a third-party Instagram post alongside an image of another product, was a
fair use "because the Photograph did not appear on its own, but as part of the Post, alongside text
and another image." Id. at *8. But as mentioned previously, Defendants exploited the Subject
Photography in their entirety. And courts have found that using images in such a way cannot
establish transformation. *See McGucken v. Newsweek LLC*, No. 19 CIV. 9617 (KPF), 2020 WL
2836427, at *5 (S.D.N.Y. June 1, 2020) (holding that defendant's embedding of plaintiff's
Instagram post was not a fair use).

Notably, Defendants fail to address the other numerous uses of the Subject Photography,
which were simply exploited as illustrative aids. And courts have recognized that "the use of an
image solely to present the content of that image…is not transformative." *Ferdman v. CBS
Interactive Inc.*, 342 F. Supp. 3d 515, 534 (S.D.N.Y. 2018) (citations omitted); s*ee also Barcroft
Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) (stating that
work is not transformative where images are used simply as "illustrative aids" depicting the
subjects described in a news article). Here, Defendants exploited Seliger's proprietary content
without his consent and reproduced the contents of the Subject Photography in their entirety in
the articles at issue. Defendants' use of the Subject Photography as an illustrative aid cannot be
considered transformative under relevant case law and weighs against the first fair use factor.

### c)   Defendants' commercial use undermines the first factor.

Moreover, Defendants fail to address the most important factor in determining whether
fair use can be employed as a defense: commercial use. Commercial use is a "factor that tends to

weigh against a finding of fair use" because "the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers, Inc.* at 562. The Supreme Court has held that "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Sony Corp. of Am. v. Universal City Studios*, Inc., 464 U.S. 417, 451, 104 S. Ct. 774, 793 (1984). To determine commercial use, courts consider "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers, Inc.* at 562. In analyzing whether the purpose of the infringing work was "profit," "monetary gain is not the sole criterion ... particularly in [a] ... setting [where] profit is ill-measured in dollars." *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000) (alteration in original) (quoting *Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir.1989) (holding that a professor's verbatim copying of an academic work was not fair use, in part because a professor can "profit" by gaining recognition among his peers and authorship credit)). Here, Seliger alleged that Defendants published his work for financial benefit. (Compl., ¶ 12). Defendants profited from their exploitation of Seliger's work in several ways, including increased revenues from the paid advertising they displayed next to Seliger's Subject Photography, new subscribers, and increased page views. This militates against fair use.

And Seliger should not be denied the opportunity to engage in discovery to further establish the extent of the commercial use. Information that will be provided in discovery, including the number of page views and total advertising revenues gained, will bear on this analysis. Thus, the first factor weighs against Defendants.

**2.     The creative nature of the Photograph favors Seliger.**

The nature of the Subject Photography favors Seliger as well. Although photographs are

often "factual or informational in nature," the art of photography has generally been deemed

sufficiently creative to make the second fair use factor weigh in favor of photographer-plaintiffs.

*Baraban v. Time Warner, Inc.*, No. 99 CIV. 1569 (JSM), 2000 WL 358375, at *4 (S.D.N.Y. Apr.

6, 2000). Here, the Subject Photography are highly artistic works, and Seliger made many

creative decisions, including composition, angles, choice of lens, lighting, and setting, to create

the resulting work. The second factor also disfavors Defendants.

**3.     Defendants exploited Seliger's entire works, which does not support a finding of fair use.**

The amount and substantiality of the portion used militates against Defendants.

Generally, "the more of a copyrighted work that is taken, the less likely the use is to be fair."

*Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir.1998). Here, Defendants copied

and exploited almost all of the entire Subject Photography in their full forms. This factor also

weighs in favor of Seliger because Defendants reproduced and displayed his entire work.

**4.     Seliger will be able to prove market harm.**

Defendants' commercial use of Seliger's content also establishes market harm. Potential

market effect is "undoubtedly the single most important element of fair use." *Harper & Row

Publishers, Inc.* at 566. A presumption of market harm "makes common sense[ ] when a

commercial use amounts to mere duplication of the entirety of an original." *Campbell v. Acuff-

Rose Music, Inc.*, 510 U.S. 569, 591, 114 S. Ct. 1164, 1177 (1994). And "in assessing harm

posed to a licensing market, a court's focus is not on possible lost licensing fees from

defendant[]'[s] challenged use…[but rather]…the challenged use's impact on potential licensing

revenues for traditional, reasonable, or likely to be developed markets." *TCA Television Corp. v.*

- 20 -

*McCollum*, 839 F.3d 168, 186 (2d Cir. 2016) (citations and quotations omitted). And as courts have previously held, "[n]ewsworthy contents will rarely justify unlicensed reproduction; were it otherwise, photojournalists would be unable to license photos, and would effectively be out of a job." *BWP Media USA, Inc.* at 406 n.6. That would be the case here. Seliger's entire livelihood depends on his ability to license and otherwise market his work. Market harm will be established and the fair-use defense fails.

## IV.    Leave to amend should be granted.

Although Seliger maintains that there are no deficiencies in his Complaint, should this Court determine that Seliger's pleadings are deficient in any way, Seliger respectfully requests leave to amend his complaint per the "liberal" standard of Fed. R. Civ. P. 15. Indeed, "when a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (citations and quotations omitted). Leave to amend is respectfully requested to the extent the court deems amendment necessary. Here, Seliger should be given the leave to amend to cure any perceived deficiencies.

///

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**V.      This motion fails.**

Defendants' Motion is a transparent attempt to avoid liability for the wholesale misappropriation of a massive number of iconic images.   As such, it is respectfully requested that Defendants' motion be denied, or, in the alternative, that Seliger be allowed to amend his complaint to cure the perceived deficiencies.

                                                        Respectfully submitted,

Dated: August 10, 2020                    By:    */s/ Scott Alan Burroughs*
Brooklyn, New York                                Scott Alan Burroughs, Esq.
                                                        Laura M. Zaharia, Esq.
                                                        DONIGER / BURROUGHS
                                                        231 Norman Avenue, Suite 413
                                                        Brooklyn, New York 11222
                                                        scott@donigerlawfirm.com
                                                        (310) 590-1820
                                                        Attorneys for Plaintiff