UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------- x

MARK SELIGER, an individual,        :

               Plaintiff,     :

               :

           v.              :

               :

GROUP NINE MEDIA, INC., a Delaware    :
Corporation; POPSUGAR INC., a Delaware   :
Corporation; and DOES 1-10, inclusive,     :

               :

            Defendants.     :

------------------------------------------------------- x

Case No. 1:20-cv-02965

Hon. J. Paul Oetken

ORAL ARGUMENT REQUESTED

 

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT OR,
<u>IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT</u>**

Rachel F. Strom
Jeremy A. Chase
Amanda B. Levine
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel: (212) 489-8230
Fax: (212) 489-8340
rachelstrom@dwt.com
jeremychase@dwt.com
amandalevine@dwt.com

*Attorneys for Defendants*
*Group Nine Media, Inc. and PopSugar Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.      PLAINTIFF FAILS TO PLEAD INFRINGEMENT AS TO 118 PURPORTED USES ................................................................................. 2

II.     PLAINTIFF'S ARGUMENTS CONCERNING FAIR USE ARE LARGELY IRRELEVANT AND MISCHARACTERIZE THE LAW ................ 3

III.    GROUP NINE IS NOT A PROPER DEFENDANT ............................................ 4

      A.     Plaintiff's Secondary Infringement Claims Rely on an Outlier, Non-Precedential Case ................................................................... 4

      B.     Plaintiff Has Not Stated a Plausible Claim Against Group Nine ............... 7

IV.    PLAINTIFF HAS NOT PLAUSIBLY ALLEGED A SECTION 1202 CLAIM ............................................................................................................ 8

V.     PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS ................................................................................................. 9

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfa Laval, Inc. v. Flowtrend, Inc.*,
No. H-14-2597, 2016 WL 2625068 (S.D. Tex. May 9, 2016).....................................................5

*Am. Fuel Corp. v. Utah Energy Dev. Co.*,
122 F.3d 130 (2d Cir. 1997)......................................................................................................7

*APL Microscopic, LLC v. United States*,
144 Fed. Cl. 489 (2019) ................................................................................................. *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................................8

*Banff Ltd. v. Limited, Inc.*,
869 F. Supp. 1103 (S.D.N.Y. 1994)..........................................................................................8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................................8

*Bell v. Oakland Community Pools Project, Inc.*,
No. 19-cv-01308, 2020 WL 4458890 (N.D. Cal. May 4, 2020)...............................................6

*Chelko v. Does*,
18-CV-00536, 2019 WL 3294201 (W.D.N.C. July 22, 2019).................................................5

*Chevrestt v. Am. Media, Inc.*,
204 F. Supp. 3d 629 (S.D.N.Y. 2016).......................................................................................9

*Greene v. Long Island R.R. Co.*,
280 F.3d 224 (2d Cir. 2002)......................................................................................................7

*Krechmer v. Tantaros*,
747 F. App'x 6 (2d Cir. 2018) ..................................................................................................9

*Michael Grecco Prods., Inc. v. Valuewalk, LLC*,
345 F. Supp. 3d 482 (S.D.N.Y. 2018)................................................................................6, 10

*Michael Grecco Prods., Inc. v. Ziff Davis, LLC*,
No. 19-cv-4776, Dkt. 34 (C.D. Cal. Nov. 18, 2019)..............................................................10

*Minden Pictures, Inc. v. BuzzFeed, Inc.*,
390 F. Supp. 3d 461 (S.D.N.Y. 2019).....................................................................................10

*Noland v. Janssen*,
    No. 17-CV-5452, 2020 WL 2836464 (S.D.N.Y. June 1, 2020) ................................................4

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014)..............................................................................................................5

*Sohm v. Scholastic, Inc.*,
    959 F.3d 39 (2d Cir. 2020).................................................................................................10

*TCA Television Corp. v. McCollum*,
    839 F.3d 168 (2d Cir. 2016)................................................................................................4

*United States v. Bestfoods*,
    524 U.S. 51 (1998)...............................................................................................................7

*Wolf v. Travolta*,
    167 F. Supp. 3d 1077 (C.D. Cal. 2016) .............................................................................5

**Statutes**

17 U.S.C. § 505...................................................................................................................10

28 U.S.C. § 1202.........................................................................................................1, 8, 9

**Other Authorities**

Federal Rule of Civil Procedure 8 .......................................................................................3

## PRELIMINARY STATEMENT

Plaintiff's Opposition to Defendants' Motion to Dismiss ("Opposition"),[1] rather than attempting to show why Plaintiff's bare-bones Amended Complaint is sufficiently pled, answers with a proverbial shrug and tells Defendants and the Court—"you figure it out."  Plaintiff does not explain how Defendants can locate the allegedly infringing uses in the 118 URLs that were either inactive at the time he filed the Amended Complaint or that were active but did not contain any of Plaintiff's Photographs.  He does not provide any reason why Group Nine is a proper Defendant (other than doubling down on his theory that a parent must be liable for the actions of its subsidiary—something that New York courts have expressly rejected).  Nor does he offer any basis for his claims of secondary infringement beyond arguing facts he does not plead and legal theories that hold no water.  He does not explain why this Court should accept his Section 1202 claim when he has failed to allege the basic elements of such a cause of action.  And he fails to assert why he could not discover the allegedly infringing uses—some of which date back to 2006— within the three-year statute of limitations.  In addition, Plaintiff mischaracterizes Defendants' fair use argument and, as a result, does not respond to the points Defendants actually made.  At bottom, the Opposition rests on nothing more than a single, non-binding case from the Court of Federal Claims and pleas that the Court grant him discovery so that he can perform the basic investigation he should have done before filing his skeletal Amended Complaint.

Plaintiff should not be allowed to proceed with a fishing expedition on his deficient Amended Complaint.  Defendants' Motion to Dismiss should be granted with prejudice.  If the Court does not grant the Motion in full, Plaintiff should be required to further amend the Amended Complaint so that Defendants can meaningfully answer Plaintiff's remaining allegations.

---

[1] Unless otherwise noted, this Reply Brief uses the same abbreviations and capitalized terms as those set forth in Defendants' memorandum of law in support of its motion to dismiss ("Motion").

## ARGUMENT

**I.    PLAINTIFF FAILS TO PLEAD INFRINGEMENT AS TO 118 PURPORTED USES**

As Plaintiff recognizes, it is his burden to plead "by what acts during what time the defendant infringed the copyright."  Opp'n at 5.  Plaintiff alleges that he met this burden merely by including a list of 159 URLs, even though—at the time Plaintiff filed the Amended Complaint—sixty-six of the URLs were dead links, forty-five led to web pages that did not contain any of the Photographs, and seven led to general informational pages in which Defendants could not locate any allegedly infringing use.  *See* Mot. at 9–10.

Plaintiff's only response is, because Defendants are media companies and because PopSugar[2] is responsible for publishing and removing content from its website, PopSugar must know what acts Plaintiff believes are infringing.  Opp'n at 6.  But websites are not entirely static; in the ordinary course of business, content is revised or updated, and sometimes pages are re-formatted or even removed entirely.  Further, websites like popsugar.com contain information that is generated dynamically—like links to similar stories—that results in different content being displayed on a given URL at different points in time or to different viewers.  By failing to include screen captures of the purportedly infringing uses, Plaintiff not only expects PopSugar to maintain every iteration of every webpage that has ever appeared on popsugar.com in the site's fourteen-year history (an impossible feat), he also tasks PopSugar with clairvoyance—*i.e.* PopSugar should be able to know exactly when Plaintiff viewed the URLs included in the Amended Complaint and what the pages displayed at the time of the viewing.  Because sixty-six of the URLs were dead

---

[2] PopSugar vehemently disputes Plaintiff's ad hominem attacks on PopSugar, including referring to it as a "clickbait" site.  Opp'n at 1.  Founded in 2006, PopSugar is a global media and technology company and leading women's lifestyle brand that draws in 300 million readers each month to its engaging, original content covering a diverse range of topics, including parenting, beauty, health, and fitness.

links at the time Plaintiff filed the Amended Complaint, Defendants have no way of ascertaining whether an infringing use of one of the Photographs actually appeared at those URLs, whether there are defenses to Plaintiff's claims of infringement, or whether Plaintiff even copied and pasted the URLs into the Amended Complaint correctly.  This cannot be enough to plausibly allege infringement, even under the more lenient standard of Rule 8.  *See* Opp'n at 5.

Tellingly, Plaintiff fails to address the fact that Defendants could not locate any of the Photographs in fifty-two of the URLs that were still active at the time Plaintiff filed the Amended Complaint (either because the Photographs did not appear on the webpages or because the webpages were endless informational pages).  *See* Chase Decl. Exs. B and C.  As pled, the Amended Complaint proffers no facts that these web pages ever contained one of Plaintiff's Photographs, let alone an infringing use.  The mere inclusion of the URLs to unrelated popsugar.com content—and those are the *only* facts that the Amended Complaint pleads—cannot be sufficient to state a plausible claim for relief.

Accordingly, because Plaintiff has failed to plead infringement with respect to 118 URLs, claims arising from these URLs must be dismissed.[3]

## II.    PLAINTIFF'S ARGUMENTS CONCERNING FAIR USE ARE LARGELY IRRELEVANT AND MISCHARACTERIZE THE LAW

Plaintiff spends much of the Opposition arguing that Defendants should not be permitted to assert a fair use defense as to all 159 URLs.  But Plaintiff mischaracterizes Defendants' argument—on this Motion, Defendants *only* asserted a fair use defense as to URL 40 (embedding a Tweet in which Plaintiff's Photograph appears as Keith Richards' Twitter avatar).  Putting aside

---

[3] Plaintiff's Opposition, for the first time, includes copyright registration numbers for the sixty-one Photographs included in Exhibit A to his Amended Complaint.  Of the forty-one URLs that contain one of Plaintiff's Photographs, only three appear eligible for statutory damages because Plaintiff registered these Photographs years after the allegedly infringing uses (URLs 40, 84, and 100).  Further, it appears that at least two of the registration numbers are invalid (Numbers 20 and 44).

Plaintiff's irrelevant arguments, Plaintiff makes only two claims that apply to this use:

*First*, Plaintiff claims that a fair use determination cannot be made on a motion to dismiss. *See* Opp'n at 15.  But courts in the Second Circuit routinely decide fair use questions on motions to dismiss, where, as here, fair use is established by comparing the works at issue side-by-side. *See*, *e.g.*, *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016) (acknowledging that the allegations of the complaint may support pre-answer dismissal of a copyright infringement claim on fair use grounds); *Noland v. Janssen*, No. 17-CV-5452, 2020 WL 2836464, at *6 (S.D.N.Y. June 1, 2020) (Oetken, J.) (granting motion to dismiss on fair use grounds).

*Second*, Plaintiff claims that "[a]llowing a news publisher to poach an image from an individual's social media account for an article that does little more than describe the setting of the image does not promote 'the Progress of science and useful Arts.'"  Opp'n at 17 (quoting *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 433 (S.D.N.Y. 2018)).  Even if Plaintiff's proposition were true, that is not what occurred here.  Defendants did not take one of Plaintiff's Photographs as it appeared on Keith Richards' Twitter account and re-publish it in full.  Rather, Defendants embedded one of Richards' Tweets in an article about the content of Richards' Tweet—a global climate strike.  By necessity, the embed of the Tweet displayed the current avatar that Richards uses for his Twitter account, which appears to include a portion of Plaintiff's Photograph.  This incidental use is not only *de minimis* (a point that the Opposition entirely fails to address), but it is also transformative.  For these reasons, claims arising from URL 40 should be dismissed.

## III.   GROUP NINE IS NOT A PROPER DEFENDANT

### A.   Plaintiff's Secondary Infringement Claims Rely on an Outlier, Non-Precedential Case

As foundation for his secondary infringement claim, Plaintiff cites to a single case from the Court of Federal Claims, *APL Microscopic, LLC v. United States*, 144 Fed. Cl. 489, 499 (2019),

which held that a copyright owner's display and distribution rights are separately infringed each time a user clicks on a website containing an infringing image. *See* Opp'n at 10. Thus, according to Plaintiff, Group Nine had the "ability" to supervise infringing activities even though it did not acquire PopSugar until November 2019 (after all of the allegedly infringing Photographs were initially published) merely because the Photographs remained on popsugar.com. *Id.* at 12. But *APL Microscopic*, already deemed an outlier by other courts, would eviscerate the Copyright Act's three-year statute of limitations for any image posted on a website and would shift the focus of copyright infringement away from the publisher's actions to the actions of unrelated third-parties. It simply cannot be the law.

In *Petrella v. Metro-Goldwyn-Mayer, Inc.*, the U.S. Supreme Court drew a sharp distinction between "separately accruing harm" and "harm from past violations that are continuing," holding that the two "should not be confused." 572 U.S. 663, 671 n.6 (2014). Accordingly, numerous courts have held that leaving an infringing image available on a website does not give rise to separately accruing copyright claims after the image's initial publication. *See*, *e.g.*, *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1099 n.13 (C.D. Cal. 2016) ("The fact that the allegedly infringing document—published in 2010, outside the relevant three-year window— *remained* on defendant's website through 2014 does not give rise to a discrete claim accruing within the three-year window."); *Alfa Laval, Inc. v. Flowtrend, Inc.*, No. H-14-2597, 2016 WL 2625068, at *5-6 (S.D. Tex. May 9, 2016) (barring infringement claim where "there is no evidence that Defendants engaged in new acts of copyright infringement after [they] originally posted the Copyrighted Materials on [their] website"); *Chelko v. Does*, 18-CV-00536, 2019 WL 3294201, at *5 (W.D.N.C. July 22, 2019) ("If every access of a copyrighted work on a website establishes a new claim for infringement, as Plaintiff contends, the statute of limitations becomes obsolete for

the internet.")[4] *cf. Michael Grecco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 512 (S.D.N.Y. 2018) (differentiating between a case with two separate instances of infringement and a case in which "the allegedly infringing photograph was only published on its website once and . . . was continuously available for public viewing").  Indeed, in *Bell v. Oakland Community Pools Project, Inc.*, No. 19-cv-01308, 2020 WL 4458890 (N.D. Cal. May 4, 2020), the court recently noted that *APL Microscopic* is the sole case that ties infringement to website views, and it did so only by improperly expanding the holding of a seminal Ninth Circuit copyright case.  Instead, as the *Bell* court explained, "[c]ourts evaluating the separate-accrual rule for online content . . . have focused on whether the defendant engaged in new acts of copyright infringement."  *Id.* at *6.

The *Bell* court's delineation between active and passive conduct by a website publisher is the only workable approach.  Under the holding in *APL Microscopic*, the three-year statute of limitations in the Copyright Act is essentially void because a website is liable for infringement any time anyone on the Internet clicks on a page and views an infringing Photograph, regardless of when that page was published.[5]  This leads to the nonsensical result that a popular website may be liable for infringement years or even decades after a story's initial publication but a website that posts an identical infringing image on the exact same date but is not frequented by users would not be similarly liable.  And, notably, Plaintiff does not even allege that any third party actually visited the infringing URLs in the last three years.

In sum, Plaintiff should not be permitted to rely on the erroneous reasoning in *APL Microscopic* in order to support his vicarious and contributory infringement claims against Group

---

[4] Plaintiff's counsel, Mr. Burroughs, is well familiar with this case, as he represented the plaintiff there as well.

[5] Indeed, under this reasoning, there would be no need for the "discovery rule" because a plaintiff could simply assert a new infringement claim based on the continuing display of an infringing image, regardless of when the image was actually published and when the plaintiff first discovered it.  This entirely contradicts Second Circuit precedent.

Nine.[6]  This claim should, accordingly, be dismissed.

      **B.**      **Plaintiff Has Not Stated a Plausible Claim Against Group Nine**

While Plaintiff's reliance on *APL Microscopic* is problematic, his claims against Group

Nine still fail for three additional reasons:

***First***, Plaintiff claims that Group Nine may be PopSugar's alter ego based only on the fact

that co-founders of PopSugar joined Group Nine's executive team and that one of the co-founders

(along with a strategic investor) joined Group Nine's board of directors.  *See* Opp'n at 10–11.

Putting aside that this allegation is not included in the Amended Complaint, it is a far cry from the

type of allegation sufficient to plead alter ego liability.  Plaintiff must show *both* that the parent

corporation exercised "complete domination" over the subsidiary with respect to the acts at issue

*and* that this domination was "used to commit a fraud or wrong" injuring Plaintiff.  *See Am. Fuel*

*Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997).  Simply alleging "overlap in

personnel," Opp'n at 11, without more, fails to show "complete domination."  *Id.*; *see*, *e.g.*, *Greene*

*v. Long Island R.R. Co.*, 280 F.3d 224, 235 (2d Cir. 2002) ("[C]orporate ownership of a subsidiary

and overlapping offices and directorates are not, without more, sufficient to impose liability on the

parent for conduct of the subsidiary[.]"); *United States v. Bestfoods*, 524 U.S. 51 (1998) ("[I]t is

entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and

that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts.")

(citation omitted).  And Plaintiff does not explain how this overlap in officers and directors was

"used to commit" the purported infringements.  Nor could he, since the alleged infringements all

occurred before the overlap even existed.  Merely alleging that Group Nine and PopSugar have

---

[6] Though his argument suggests Plaintiff asserts secondary liability against Group Nine only, throughout this section of his Opposition, Plaintiff refers to "Defendants" collectively.  As explained in Defendants' Motion, because, with respect to PopSugar, the claims of secondary infringement appear identical to those of direct infringement, any claims against PopSugar for contributory or vicarious infringement must be dismissed.  *See* Mot. at 19.

personnel in common following an acquisition thus cannot be enough to plead alter ego liability.

*Second*, with respect to contributory liability, Plaintiff alleges only that "Defendants" had access to Plaintiff's Photographs and "had or should have had knowledge of [Plaintiff's] ownership of the Subject Photography." Opp'n at 13. But Plaintiff still fails to plead *any* facts to suggest how Group Nine—which acquired PopSugar six months before Plaintiff filed the Amended Complaint—would know about the inclusion of the Photographs on URLs that pre-date the acquisition (sometimes by thirteen years). Crediting Plaintiff's claim would mean that any parent that acquires a subsidiary is suddenly imputed with constructive knowledge of all activities of the subsidiary occurring at any point in time. Plaintiff's claim for contributory liability cannot stand.

*Third*, for vicarious liability, Plaintiff claims that, "[a]s the owner of a website receiving revenue from the infringing uses, Group Nine certainly had the right to oversee the infringing acts . . . and financially benefitted from the distribution. . . of [Plaintiff's] content." Opp'n at 13. New York courts, however, have held that "to prevail against a parent corporation on the theory of vicarious copyright infringement, the plaintiff must present evidence that the parent has done more in relation to the infringing activity than simply be the parent." *Banff Ltd. v. Limited, Inc.*, 869 F. Supp. 1103, 1110 (S.D.N.Y. 1994). This means showing "some continuing connection between the two in regard to the infringing activity." *Id.* Plaintiff does not allege anything of the sort.

As Plaintiff pleads not a single fact that supports keeping Group Nine in this case such that he could satisfy the plausibility standard established in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the claims against it should be dismissed.

## IV.   PLAINTIFF HAS NOT PLAUSIBLY ALLEGED A SECTION 1202 CLAIM

Plaintiff argues that he has adequately asserted a claim under 28 U.S.C. § 1202 with respect to all 159 URLs merely because he has now attached two "non-inclusive exemplars" where Defendants purportedly removed/replaced Plaintiff's copyright management information

("CMI").  *See* Opp'n at 15.[7]  But rather than support Plaintiff's claim, this attachment only highlights the deficiencies in the Amended Complaint.  Plaintiff has not alleged where the Photographs were initially published, what CMI the initial Photographs contained, or that Defendants removed this information in all 159 URLs.  And his general assertion that the Photographs were "routinely" published with CMI says nothing about whether all sixty-one Photographs were *actually* published with such information or what that information was.

Even if Plaintiff's submission of two "exemplars" at this stage somehow cured his failure to allege that the specific Photographs were originally published with CMI and that Defendants removed or replaced CMI as to *all* Photographs, it would not cure the other pleading deficiencies to which Plaintiff fails to respond.  As Defendants explained in their Motion, Plaintiff did not allege that Defendants acted "with the intent to induce, enable, facilitate, or conceal infringement," as is required to plead a § 1202(a) claim.  *See* Mot. at 21; *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018).  And with respect to a § 1202(b) claim for removal or alteration of copyright management information, Plaintiff did not allege that any removal of information was done intentionally.  *See* Mot. at 22; *Chevrestt v. Am. Media, Inc.*, 204 F. Supp. 3d 629, 631–32 (S.D.N.Y. 2016).  For these reasons, Plaintiff's claim must be dismissed.

## V.    PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Finally, thirty-four of the URLs relate to articles that were published more than three years ago and should be dismissed on statute of limitations grounds.  *See* Mot. at 17–18.  In response, Plaintiff cites to *APL Microscopic* and argues that each time a user visits a URL, the statute of

---

[7] Notably, the second example that Plaintiff includes purports to correspond to URL 31, one of the URLs for which Defendants were unable to locate an infringing image because the URL links to a seemingly endless informational page.  The inclusion of this screenshot—although noticeably lacking the broader context of the web page in which it appears—only underscores Plaintiff's pleading failures.  If Plaintiff already has screenshots of the allegedly infringing uses, he should have attached them to his Amended Complaint.

limitations restarts.  For the reasons stated in Section III.A, *supra*, including that Plaintiff never actually pled that anyone visited the URLs in the last three years, Plaintiff's citation to *APL Microscopic* is without merit.  Plaintiff also faults Defendants for failing to cite the case, *Sohm v. Scholastic, Inc.*, 959 F.3d 39, 50 (2d Cir. 2020).  But *Sohm* merely repeats the discovery rule, which Defendants referenced in their Motion.  *See* Mot. at 17–18.  Last, Plaintiff attempts to distinguish *Minden Pictures, Inc. v. BuzzFeed, Inc.*, 390 F. Supp. 3d 461 (S.D.N.Y. 2019), by noting that, unlike Minden, he is "not a licensing agency but a working photographer."  Opp'n at 8.  But such reasoning played no factor in the court's decision in *Michael Grecco Prods., Inc. v. Ziff Davis, LLC*, No. 19-cv-4776, Dkt. 34 at 2 (C.D. Cal. Nov. 18, 2019)[8], in which the plaintiff was a photography company run by an individual photographer.  As in *Grecco*, Plaintiff proffers no "facts that would suggest [he] had no reason to know of the infringement prior to [the date of actual discovery]."  *Id.*  In fact, the Opposition refers to PopSugar as an "abhorrent" copyright infringer (a claim that PopSugar denies).  Opp'n at 1.  Under Plaintiff's own reasoning, he had every reason to know of the alleged infringements or had the ability to locate them within three years of the initial publication dates using the same reverse image searching that he used now.

Regardless, even if this Court does not dismiss these claims on statute of limitations grounds, as Plaintiff admits, he is only entitled to "retrospective relief running [] three years back from the date the complaint was filed."  Opp'n at 8.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion to dismiss the Amended Complaint with prejudice and award Defendants their attorneys' fees and costs, as the prevailing party, pursuant to 17 U.S.C. § 505.

---

[8] This decision is attached hereto as Exhibit 1.

Dated:   August 17, 2020
         New York, New York

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ Rachel F. Strom*
     Rachel F. Strom
     Jeremy A. Chase
     Amanda B. Levine

1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
Tel: (212) 489-8230
Fax: (212) 489-8340
rachelstrom@dwt.com
jeremychase@dwt.com
amandalevine@dwt.com

*Attorneys for Defendants*
*Group Nine Media, Inc. and PopSugar Inc.*